# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KAC, SG (minor), MB (minor), ⌷            )
              **PLAINTIFFS**            )    Case No:
Vs.                                    )    **PLAINTIFFS DEMAND JURY TRIAL**
                              )
                              )

**Children's Mercy Hospital (CMH)**            )
Diane Gallagher – Chair; Kevin Barth – Vice Chair; )
Charlie Harris, Jr., – Secretary; ⌷            )
Vince Clark – Treasurer; Kevin Bryant;            )
Christy Dempsey; Jeff Geheb; Olga Koper;            )
Bill Krueger; Terry Matlack; Ashley McClellan;            )
Paul E. McLaughlin; Walter Porter;            )
Alejandro Quiroga; Jennifer Sauer; Jotishna Sharma;)
CMH Social Worker #1; CMH Security Guard #1,  )
**Serve:** 2401 Gillham Road                        )
       Kansas City, MO 64108                )
                              )

**Clay County Missouri Sheriff's Department**            )
Will Aiken, Jeffrey Hamilton Harmon;            )
John Earl Teale                                    )
**Serve:** 12 S. Water St                        )
       Liberty, MO 64068                )
                              )

**Clay County Child Support Enforcement**            )
Grant Kelly, Director; Zachary Thompson-PA            )
**Serve:** 11 S. Water St                        )
       Liberty, MO 64068                )
                              )

**Clay County Missouri**            )
Daren L. Adkins (DLA); Timothy Jon Flook (TJF); )
Alisha Diane O'Hara Salmon Overly (ADOSO);            )
Sherrill Page Duncan Vickers Roberts (SPDVR)            )
**Serve:** 11 S. Water St                        )
       Liberty, MO 64068                )
                              )

Toni DeGoosh (TD), Sean Eric Gasaway Sr. (SEGS);)
Vanita LaTisha Taylor Howard Gasaway (VLTHG);)
Robert Emerson J. Gordon (REJG)                    )
**Serve:** 415 E. 12th St                       )
     Kansas City, MO 64106                  )
                                            )

**<u>Clay County Missouri Board of Commissioners</u>  )**
Jerry Nolte – Presiding Commissioner;              )
John Carpenter, Jay Johnson, JoAnn Lawson, ⌷)
Megan Thompson, Scott Wagner,                   )
Jason Withington                                  )
**Serve:** Clerk of the Clay County Commission     )
      1 Courthouse Sq.                        )
      Liberty, MO 64068                       )
                                              )

Rachel Shae Holiman;                    )
                                            )

**<u>Judicial Performance Review Committee</u>**       )
Judge Anthony Rex Gabbert, Chair;                )
Ben Schmitt, James H. Thompson, Jr;              )
Melissa Essig; Noel J. Shull                     )
**Serve:** 1300 Oak St.                            )
Kansas City, MO 64106                          )
                                            )

**<u>Kansas City Kansas Community College</u>**        )
Greg Mosier, President                          )
**Serve:** 7250 State Ave                          )
     Kansas City, Kansas 66112              )
                                            )

**<u>Unified Government of Wyandotte County, KS</u>  )**
**<u>Wyandotte County, KS Board of Commissioners</u> )**
**<u>Kansas City Kansas Police Department</u>**       )
Melissa Bynum, Tom Burroughs, Andrew Davis   )
Gayle E. Townsend, William J. Burns Jr.;         )
Christian Ramirez; Dr. Evelyn Hill; Mike Kane     )
Phillip J. Lopez; Chuck Stites;                    )
Karl A. Oakman, Chief of Police                  )
**Serve:** 701 N. 7th Street                     )
     Kansas City, KS 66101                  )
                                            )

**<u>Kansas City Missouri Police Department</u>**       )
**<u>Kansas City MO Board of Police Commissioners</u>;)**
Dawn Cramer – President; Tom Whittaker - VP     )
Madeline Romious; Quinton Lucas - Mayor        )

2

David Kenner; John Doe Police Officers 1-10;   )
Stacey Graves, Chief of Police   )
**Serve:** 1125 Locust St.   )
      Kansas City, MO 64106   )
   )
Deborah Martin; Scott J. McGreevey;   )
   )

**Missouri Bar Association**   )
Mischa Buford Epps, Executive Director   )
**Serve:** 326 Monroe   )
      Jefferson City, MO 65102   )
   )

**MO Department of Child Support Enforcement** )
**Serve:** 615 Howerton Court   )
      Jefferson City, MO 65102-2320   )
   )

**MO Department of Social Services and Missouri** )
**Family Support Division**   )
Jessica Bax, Director of MDSS;   )
Daryl Wusk, Director of FSD   )
**Serve:** Broadway State Office Building   )
      221 West High St   )
      Jefferson City, MO 65102   )
   )

**MO Commission on Retirement, Removal, and** )
**Discipline of Judges**   )
James M. Smith- Director; Heather Hall;   )
Eddy A. Justice; Cary J. Mogerman;   )
Patrick B. Starke; Gary M. Gaertner, Jr.;   )
Laura J. Johnson   )
Serve: 2190 South Mason Road   )
      Suite 201   )
      St. Louis, MO 63131   )
   )

**MO Judiciary & Civil &Criminal Jurisprudence** )
Sen. Nick Schroer-Chair; Sen. Karla May;   )
David Gregory- Vice Chair; Sen. Ben Brown;   )
Sen. Mary Elizabeth Coleman;   )
Sen. Steven Roberts; Sen. Adam Schnelting   )
**Serve:** 201 W. Capitol Ave.   )

Jefferson City, Missouri 65101         )
**MO Rules, Joint Rules, Resolutions & Ethics)**   **)**
Sen. Tony Luetkemeyer – Chair; Sen. Karla May   )
Cindy O'Laughlin- Vice Chair; Sen. Mike Cierpiot; )
Sen. Brian Williams         )
**Serve:** 201 W. Capitol Ave.       )
       Jefferson City, Missouri 65101   )
   )

**North Kansas City School District (NKSCD)**   **)**
**Gashland Elementary**       **)**
Dr. Rochel Daniels, individually and in  official   )
capacity as Superintendent of Schools; and   )
Steven J. Book (SJB),        )
Tara M. Shannon Palmer (TMSP)    )
   )

**MO Office of Chief Disciplinary Counsel**   **)**
Laura E. Elsbury (LEE), Chief Disciplinary Counsel)
Russell, Mary Rhodes (MRR)      )
Serve: 3327 American Ave      )
Jefferson City, MO 65109      )
   )

 Stepp, Devin M.;         )
Wimer, Janet Love Holland (JLHW)    )
         **DEFENDANTS**   )
   )

Interested Parties:          )
Scott Fitzpatrick. Missouri State Auditor   )
Michael Kehoe, Governor of Missouri    )
Laura Kelly, Governor of Kansas     )

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiffs KAC, MB, and SG, appearing pro se, allege:

## INTRODUCTION

The United States Supreme Court has established that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 520 (1971). Such pleadings must be considered without strict adherence to technicalities, as pro se litigants are not expected to meet the same level of legal precision as attorneys. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.*, 151 F.2d 240; *Pucket v. Cox*, 456 F.2d 233. Courts must liberally construe a pro se plaintiff's complaint. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (1996).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has emphasized that the key issue is not whether the plaintiff will ultimately prevail, but whether they are entitled to present evidence in support of their claims. A complaint should not be dismissed for failure to state a claim unless it is evident that no set of facts could support the plaintiff's entitlement to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, dismissal without leave to amend is improper unless, upon de novo review, it is clear that no amendment could salvage the complaint. *Schneider v. California DOC*, 151 F.3d 1194, 1196 (9th Cir. 1998).

A judgment on the pleadings is appropriate only when there is no dispute regarding any material fact and the moving party is entitled to judgment as a matter of law, applying the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citations omitted).

This case has always been—and remains—about jurisdiction, full stop. The unlawful usurpation of jurisdiction and abuse of power have had severe and adverse effects on the Plaintiff's life, leading to numerous injustices, including police brutality upon Plaintiff, the garnishment of Kansas tax returns, the filing of false Kansas child support claims, and the initiation of false charges in Kansas and Missouri. Additionally, Missouri's refusal to relinquish jurisdiction—despite never having it—has obstructed the Plaintiff's child custody case in Kansas, including its failure to participate in a UCCJEA conference in Kansas courts.

**"The person who watches you drown is no different than the person who holds your head beneath the water."**

Inaction can be just as destructive as direct harm. Silence, passive complicity, or simply standing by while someone suffers—all lead to the same devastating outcome. KAC's children are hurting. They're confused, feeling abandoned, and exposed to danger because those tasked with protecting families have chosen to protect a corrupt court system and its enablers instead. They've decided that preserving reputations matters more than truth—or more than allowing KAC to be a mother to her own children.

Let's be clear: when you have the power to stop harm and choose not to, you become complicit in it. That's not just a moral failure—it's a betrayal, especially from those who've sworn to uphold justice and integrity. This kind of betrayal is a deep, insidious form of harm. Worse, it enables the systemic weaponization of children against their own parents—an ugly tactic with roots in the slave trade and Jim Crow era.

This is the exact reality KAC and her children are living. ADOSO and SPDVR have abused their power so egregiously that it crosses into the criminal. And yet, those with the authority to intervene have done nothing—effectively empowering these individuals and their allies to separate a mother from her

6

children without legal cause. Through unlawful and unethical actions—falsified documents, lies to judicial authorities and even the Governor of Missouri—they've protected their own interests while harming KAC. They've gone so far as to cause her physical harm and push false charges to silence her, all while they themselves continue to operate outside the law.

How can this be called justice when a court system is allowed to go to such extreme and unethical lengths just to protect titles and accolades that were never rightfully earned and should never have been retained? These women—and their enablers—have deliberately kept KAC cut off from her children, denying her even basic phone contact or physical interaction. Why? Because they believe no one has the power or courage to hold them accountable or challenge their twisted, vindictive version of justice.

Now, they're trying to strip KAC of her freedom of speech by weaponizing the legal system—manipulating her words and twisting them into so-called "threats" to suit their narrative. Their fear isn't of danger—it's of public exposure. They took a simple statement about an upcoming press conference, which hadn't even been disclosed yet, and distorted it into an alleged threat against their lives. That's not justice—that's deflection and desperation.

They also accused KAC of making their addresses public, when in reality, those addresses were only listed in legal filings for service—standard procedure in any civil case. More importantly, that information is already public and easily accessible through court records or a basic Google search. Their claims are not only baseless—they're deliberately manipulative.

This is an age-old tactic: a playbook where certain white women weaponize crocodile tears and performative distress to silence women of color. And it's being used now to inflict harm on KAC—strategically, maliciously, and without consequence.

As a result, KAC's legitimate grievances have been repeatedly dismissed—no match for the performative cries of these so-called "white damsels in distress," especially when they're cloaked in black robes and backed by a system where white men can shoot Black boys in the face for simply ringing the wrong doorbell and still be protected.

These women and their enablers have made sure that trauma hits KAC from every angle. First, the raw devastation of being illegally and unjustly torn from her child. Then, the compounded agony of enduring gendered racism and systemic discrimination. And as if that weren't enough, she's faced the additional cruelty of not being believed, not being supported, and having her courage and voice distorted—reframed as threats, violence, or criminal behavior.

This lawsuit also confronts the daily invisibility and dehumanization KAC endured at CCCC—and the profound psychological and material harm that followed. It exposes how judicial and elected officials have ignored these injuries, leaving KAC and her children without justice or remedy. It speaks to the complex moment Black women like KAC constantly face—when they must decide whether, and how, to challenge others' assumptions about their status and "place" in society.

It's about the consequences of using one's voice—whether firm or measured—and how that very act can render Black women hyper-visible, instantly labeled as threatening. It's about the displaced blame that follows how simply responding to aggression shifts the focus away from the aggressor and squarely onto the target. In a single moment, a rational Black mother, rightfully fighting for her children, is reduced to a caricature—the Angry Black Woman.

8

This is about intersectionality—the compounded harm Black women endure not just because they are Black or female, but because they are both. That harm often comes at the hands of White men, Black men, and White women alike.

From the outset of this case, KAC and her children have faced relentless, bias-driven aggression—led by ADOSO, SPDVR, and their enablers—who have sought to discredit, intimidate, and blame KAC simply for having the courage to confront their criminality and prejudice.

Let's be clear: any fear these women claim to feel is not rooted in real threat—it's rooted in the fear of accountability. It's fear of public exposure for knowingly and willfully engaging in unethical and destructive conduct to dismantle another family.

The type of trauma inflicted on KAC—and countless other women of color—is the kind that often goes unspoken, not because it's rare, but because it's so normalized that most people refuse to acknowledge it. It's what many of us know as *the weary weaponizing of white women's tears*—a manipulative tactic made even more absurd when employed by women who control entire law enforcement entities and influence judicial officers across state lines.

Whether KAC was angry or calm, pleading or firm, she was still perceived as the aggressor. These women are directly responsible for her heart attack and the ongoing health issues she now faces. They stood by, watched KAC suffer after a brutal attack, and then used their influence to shield her assailant. They've stood by while SG has been subjected to physical abuse and now remains in proximity to not only a violent felon—but a registered sex offender.

And if the actions of ADOSO, SPDVR, and REJG are truly lawful and just, then let's apply that same standard across the board. By that logic, the registered sex offender should have his custody restored

in the 16th Circuit Court of Jackson County, Missouri. His wife should have the decision reversed that took custody of her daughter away—simply because she married him. And both should be welcomed into the courtroom of REJG, the newly appointed Family Court Commissioner, since he apparently deems such circumstances appropriate for KAC's child.

These are the consequences of inaction and complicity. This is the reality KAC and her children are living. And this is exactly what this family seeks to expose and eradicate—so no one else is made to suffer in silence while those in power manipulate justice to protect their own.

White women know exactly how their race shields them—just as they know ours condemns us. Their tearful performances, in this context, are not harmless. They are a calculated form of emotional and psychological violence that props up the same system of white dominance many of them claim to oppose. These displays aren't innocent—they're weaponized. And they come at a cost to women like KAC.

There's a common excuse used to escape accountability: that inaction isn't the same as wrongdoing. That standing by isn't the same as causing harm. But here's the truth—when you have the power to intervene and choose not to, you've made a choice. You've chosen to let someone suffer. It doesn't matter whether harm comes from a push or from standing back and watching someone fall—the damage is the same, and so is the responsibility.

To say it plainly: this is trauma rooted in a well-worn tactic—white women flipping the narrative to avoid accountability by casting themselves as the victims and accusing their accuser. Today it's KAC. Tomorrow it'll be SG. But KAC refuses to be silent, and she refuses to let her children become the next casualties.

Let's call this what it is: these women broke the law. They are still operating beyond their legal authority and actively obstructing higher court intervention. They continue to abuse their positions by refusing to comply with the judicial process outlined in the Uniform Child Custody Jurisdiction and Enforcement Act—the very law co-authored by their own presiding judge and supervisor in Missouri.

When confronted with facts, they deflect with lies. They twist the narrative. But even if KAC had committed the most extreme act—shot King, Kennedy, or President Trump—it wouldn't change this one irrefutable fact: **these women lied.** They are liars. They continue to inflict serious, irreparable harm on this family. And they believe they're untouchable—above the law, beyond accountability, and entitled to destroy families behind closed doors.

KAC will not allow that lie to stand—not for herself, not for her children, and not for the countless others who will suffer if this system remains unchecked.

There is no moral or legal difference between watching someone drown and holding their head underwater. One is an act of commission, the other of omission—but both are acts of cruelty. And both carry the same weight of accountability.

Parental alienation is abuse. It is psychological torture. It is neglect. Yet the very legal system that claims to protect children not only tolerates it—it enables it, every single day. That abuse is happening to KAC and her children right now. It has been happening since 2022, when the 7th Circuit Court in Clay County, Missouri unlawfully usurped jurisdiction from the state of Kansas. KAC has been forced to stand helplessly on the sidelines while SEGS systematically erases her from SG's life—with full complicity from ADOSO, SPDVR, and their network of enablers, all acting without consequence.

Those seeking to silence KAC want to reduce this matter to a simple custody dispute. But this is not about custody—this is about jurisdiction. It is about the repeated, willful violations of federal law by SEGS, members of the Kansas and Missouri judiciary, and the state and federal agencies they've recruited into their conspiracy. It's about a corrupt system that empowers vindictive, abusive parents to rob a child of the right to love and be loved by both parents. It's about a judiciary that claims to serve the "best interests of the child" while allowing custody and visitation to be weaponized as tools of control and destruction.

Despite the crimes and physical abuse KAC has endured, the true victims are her children. That is why this fight will never stop—because the harm done to her children is deeper and more lasting than any injury KAC herself has sustained. She will continue to fight against these bad actors who hide behind robes and titles they neither earned nor deserve—individuals who lie, cheat, steal, and desecrate the very idea of justice while masquerading as its gatekeepers.

Further violations include the Clay County Sheriff's Department and the Kansas City, Missouri Police Department's outright refusal to enforce two valid protection orders issued by Kansas courts. In direct defiance of those orders, they have obstructed justice. The North Kansas City School District has also ignored those orders, unlawfully enrolling KAC's child in a district where she does not reside. These institutions have interfered in active criminal court cases pending in Kansas against the respondents—yet another example of coordinated obstruction.

The illegal actions originating from the 7th Circuit Court in Liberty, Missouri—specifically by Alisha Diane O'Hara Salmon Overly, Sherrill Page Duncan Vickers Roberts, Robert E.J. Gordon, Scott McGreevy, Devin M. Stepp, and their co-conspirators—are secondary only to their continued and flagrant violations of federal and state law. These include breaches of the Uniform Child-Custody Jurisdiction and

Enforcement Act (UCCJEA), the Parental Kidnapping Prevention Act (PKPA), and egregious violations of due process and First Amendment rights.

At its core, this case is about the catastrophic consequences of judges and court officials operating without oversight or consequence—collaborating across jurisdictions to conceal unlawful conduct in order to avoid indictment, impeachment, or loss of political and financial power.

For almost three years, these defendants have carried out a targeted, sustained campaign of harassment and discrimination against KAC and her family. This includes sex-based discrimination, parental alienation, constitutional rights violations, threats, harassment, defamation, abuse of power, and obstruction—all of which are not only unethical, but criminal.

Their actions have created a hostile, biased, and unlawful judicial environment in both Kansas and Missouri. And every agency with the power to stop it has been given direct notice—and every one of them has chosen to look away. That failure to act is not neutrality—it is complicity.

State, district, and judicial officials were not merely negligent—they acted with calculated and deliberate indifference. Despite having clear, documented notice of the abuse, bias, and targeted harassment inflicted upon Plaintiffs, they willfully turned a blind eye. Their inaction was not passive—it was a conscious decision to protect misconduct and suppress accountability. In doing so, they obstructed justice and outright denied Plaintiff KAC the fundamental right to be heard by a fair and impartial tribunal. These officials did not just fail in their duty—they became complicit in the harm, stripping KAC of every legal protection, opportunity, and pathway to justice that the law demands.

The Supreme Court of Missouri has clarified that "Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275

S.W.3d 249, 252 (Mo. banc 2009). "[P]ersonal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *Id.* at 252.

Missouri Revised Statutes §§ 54.13(b) and 54.14(b) state: *"Personal Service Outside of the State: Upon an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process."*

Similarly, K.S.A. 60-205(a) and (b)(2)(B)(ii) provide that service is made by handing the documents to the person directly or, if the person has no office or the office is closed, by delivering them to the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there.

Jurisdiction grants a court the authority to hear and decide a case, making it a fundamental prerequisite for any legal proceeding. In child custody matters, a state must first establish jurisdiction over the child before making any determinations regarding custody or visitation. Clay County, Missouri, has never had, and still does not have, jurisdiction over either Plaintiff in the child custody case. Yet, Clay County Circuit Court (CCCC) has engaged in flagrant legal violations to retain control over the case—deliberately obstructing the involvement of other circuits that are not complicit in their misconduct. By doing so, they have inflicted further harm on Plaintiffs as retaliation for exposing the systemic abuses occurring within Clay County.

14

Missouri courts have historically conflated jurisdiction and venue through an improper interpretation of the state's service of summons and venue statutes. Before 1989, Missouri's service statute dictated that suits could be instituted *"by filing in the office of the clerk of the proper court."* Missouri's general venue statute determined where such suits could be filed. Courts erroneously interpreted "proper" in the service statute to mean proper *venue*, leading to a faulty legal premise in which personal jurisdiction was linked to venue. As clarified in *State ex rel. DePaul Health Center v. Mummert*, a court that lacks proper venue under the statute also lacks the authority to issue a summons—rendering any service of process invalid and depriving the court of jurisdiction over the defendant.

Parental rights are fundamental rights protected under federal and constitutional law. In *Troxel v. Granville*, 530 U.S. 57 (2000), the U.S. Supreme Court unanimously affirmed the fundamental nature of parental rights, with all nine justices recognizing their constitutional significance. Fundamental rights, also known as substantive or natural rights, are inherent to individuals and cannot be arbitrarily denied.

When a state court infringes upon, denies, or deprives a parent of these rights—whether temporarily or permanently—it unlawfully intrudes upon the parent-child relationship, violating the parent's fundamental liberty interest in the custody of their minor child. Defendants' egregious actions have resulted in Plaintiffs being unjustly separated for over 14 months, without cause or legal justification. The notion that a court, based solely on the recommendation of a GAL whom Plaintiffs had never seen or met, could make such a life-altering decision is both absurd and a profound miscarriage of justice.

Parenting is an inherently complex and deeply personal process, shaped by factors such as lifestyle, religion, morals, and individual choices—decisions that belong solely to the parent. The unlawful interference with these rights causes irreparable harm to both the child and the alienated parent. It is

evident that Defendants, without legal authority or jurisdiction, impermissibly intruded upon Plaintiffs' fundamental parental rights.

When courts and judges deliberately exceed their jurisdiction and engage in such unconstitutional conduct, state authority directly conflicts with federally protected rights. At this juncture, federal protections must take precedence. Under Article VI of the U.S. Constitution, the Supremacy Clause mandates that *"the judges in every state shall be bound [by the Constitution and the laws of the United States]."*

A parent has the right to seek legal recourse for interference with parental rights. Relevant case law supporting this principle includes *Strode v. Gleason*, 510 P.2d 250 (1973); *Prosser: Handbook of The Law of Torts* [West Publ. 1955, p. 682]; *Carrieri v. Bush*, 419 P.2d 132 (1966); *Swearingen v. Vik*, 322 P.2d 876 (1958); *Lankford v. Tombari*, 213 P.2d 627 (1950); *Restatement of Torts* § 700A; and *Marshall v. Wilson*, 616 S.W.2d 932 (1981).

## Failure to Adhere to Jurisdictional Requirements, Fabrication of Evidence, and Continued Abuse of Judicial Power

Plaintiffs have repeatedly and unequivocally demanded that this court adhere to federal law, enforce applicable state statutes, and uphold the Klaxon doctrine to ensure a fair and lawful application of the law. They have sought protection from the direct and escalating consequences of unlawful conduct—consequences that include unlawful incarceration, physical harm, parental alienation, domestic violence, false imprisonment, fabricated charges, and stalking. These harms are not hypothetical—they are lived realities, inflicted solely because Plaintiffs dared to hold Respondents accountable for their egregious and illegal actions.

Sean Eric Gasaway, Sr. (SEGS) explicitly stated in UCCJEA filings that Plaintiff resided in Kansas, making the jurisdictional question both foundational and uncontested. Since May 2022, Plaintiffs have consistently and clearly challenged both personal and subject matter jurisdiction. Even SPDVR conceded in open court transcripts that a jurisdictional review was required—yet deliberately refused to conduct one. This failure is not a procedural oversight; it is a willful and systemic evasion of legal obligation. SPDVR and her co-conspirators have continued issuing rulings in a case over which they have no lawful authority, compounding their abuse of power with each act of judicial overreach.

Their misconduct extends far beyond jurisdictional violations. Defendants have fabricated criminal charges, stalked Plaintiffs and their associates, and issued threats designed to prevent Plaintiff KAC from entering Liberty, Missouri—an intentional tactic to suppress her ability to rectify these unlawful actions, avoid federal service of process, and obstruct justice in the correct jurisdiction: the State of Kansas.

Further demonstrating their blatant disregard for legal procedure and truth, SPDVR and Scott McGreevy submitted a knowingly false affidavit to the 7th Circuit, falsely claiming that Plaintiff had been personally served with court documents. This perjury was committed in the face of irrefutable video evidence showing that process server Deborah Martin discarded the documents on the ground at an incorrect address in Kansas. Additionally, Cell Hawk data and corroborating video footage prove that Plaintiff was in another state at the time service allegedly occurred.

A partial video of the failed service is available at the following link: https://youtube.com/shorts/fU8Xhk_BhYw?si=9K0db21gpIvrv8Cz, with still photos included for further documentation.



K.S.A. 23-37,107 and Missouri Rev. Stat. § 452.845 explicitly state: *"If a question of the existence or exercise of jurisdiction under sections 452.700 to 452.930 is raised in a child custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously."* Yet, as of February 18, 2025, the issue of jurisdiction remains unaddressed.

Rather than complying with the law, these bad actors have enlisted the support of Kathleen Lynch, who continues to obstruct justice by manipulating the legal process and evading Kansas state and federal law. Lynch has deliberately refused to hear the child custody case filed by Plaintiffs in 2023, citing Missouri's failure to relinquish jurisdiction as an excuse. This blatant abuse of power and disregard for federal and state law will not go unchallenged and will be addressed in a separate legal action if necessary.

Missouri courts derive their authority to issue custody and visitation orders from the Uniform Child Custody Jurisdiction and Enforcement Act (Mo UCCJEA). If the legal requirements outlined in this statute are not met, a Missouri court lacks jurisdiction to establish a parenting plan for the children. Even if the court has jurisdiction over matters such as dissolution of marriage or paternity, its authority is limited— while it may dissolve the marriage or establish paternity, it cannot issue any orders regarding custody or visitation without proper jurisdiction.

Selected statues from the Missouri UCCJEA are set forth below. 452.740. 1. Except as otherwise provided in section 452.755, a court of this state has jurisdiction to make an initial child custody determination only if:

1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months prior to the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

2. A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 452.770 or 452.775, and:

    a. The child and the child's parents, or the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence; and

    b. Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

3. All courts having jurisdiction under subdivisions (1) and (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 452.770 or 452.775; or

4. No state would have jurisdiction under subdivision (1), (2) or (3) of this subsection.

Subsection 1 of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

Missouri has failed to establish either personal or subject-matter jurisdiction, yet continues to unlawfully detain SEG within the state, exposing them to the presence and care of violent predators and sexual offenders. The 7th Circuit and its co-conspirators have engaged in a pattern of misconduct,

including stalking, inflicting bodily harm, filing false charges, issuing threats, and persistently harassing

KAC in an effort to conceal their scheme. https://youtu.be/7_b55d7h_Nc?si=nniyKN31OdbNT9QO



https://youtu.be/69Hk7BMh29I?si=fLmrQi2ybwC2cM3P



https://youtu.be/TS9PmiJw8eA?si=Y1fkrb6hIZg03kCG



Violence against women and children in the context of child custody disputes is a critical and complex issue that has long been neglected by the legal system, particularly in Clay County, Missouri. Research and reports indicate that child custody and visitation arrangements frequently serve as a means

for abusive men to maintain control over their victims. In fact, highly contested custody cases—those requiring independent investigation—often involve a documented history of intimate partner violence (IPV).

Despite this well-documented reality, Robert E.J. Gordon failed to investigate past instances of abuse and blatantly disregarded the five (5) restraining orders filed against SEGS since 2016. A thorough investigation would have revealed that multiple women in both Kansas and Missouri had filed similar restraining orders against SEGS, and that he had been incarcerated for intimidating a witness and threatening Judge Kevin O'Grady in Johnson County, Kansas District Court.

Moreover, contrary to popular belief, evidence demonstrates that fathers who pursue custody through family court litigation often obtain primary or joint custody. This is primarily due to court programs that initially incarcerate fathers, only to later "rehabilitate" them through initiatives designed to secure federal funding and advance judicial careers. A prime example is the Connections to Success program, where both ADOSO and SPDVR served on the board of directors. This program requires participation in Parenting Court, which they oversee, allowing individuals with criminal histories to continue unlawful behavior while receiving financial incentives—and, ultimately, custody of their children.

The federal government allocates funding to state courts for child support cases under Title IV-D of the Social Security Act, offering financial support to state child support enforcement programs. Typically, the government reimburses states for a significant portion of the costs associated with child support enforcement, including legal, administrative, and court-related expenses. Given this, why was KAC charged over $5,000 by REJG and CCCC for services that were never rendered and to parties who

unlawfully usurped jurisdiction? This conspiracy extends far beyond just this family and warrants immediate investigation by the U.S. Attorney's office and the Federal Bureau of Investigation.

In March 2023, Victor Hurlbert, Clay County Missouri Auditor, revealed in his annual report that the "Child Support Recovery" grant is the largest revenue category for the Prosecutor's Office. CCCC receives an average of $1.3 million annually in federal funding to carry out these activities. From 2004 to 2022, CCCC has received a total of $25,074,044.97 from the federal government. If success is measured by dollars and cents when it comes to family outcomes, it's no surprise that Missouri has earned the "Cash4Kids" label and is ranked #4 in human and child trafficking. These individuals control millions of dollars and human lives while intentionally breaking the law for personal prestige and financial gain, keeping families trapped in a vicious cycle of incarcerating one parent after another until one parent is entirely alienated and too broken to continue. I assure you, that parent will never be KAC.

The Transitions Program is staffed by dedicated volunteers who commit their evenings to ensuring parents have at least one weekly visit with their children. Yet, these women deem it appropriate to charge parents up to $70 or more per hour for this service, even when a parent visits with their child in the community. Again, where does the $27,074,044.97 go?

SEGS owed over $13,000 in child support at the time of trial and was recently incarcerated for violating the child support order. Yet, CCCC awarded him sole custody of my child and illegally abated child support from April 2022 until the day of trial. They even absurdly expected KAC to pay SEGS $700 per month in child support to her abuser. These actions are despicable and, frankly, should be called what they are.

The evidence in this case is both shocking and appalling. Failing to hold the responsible parties accountable—including through criminal prosecution—would constitute a grave miscarriage of justice.

23

The greed, corruption, and criminal behavior of those involved have severely impacted our safety and mental well-being, and their actions must not go unpunished.

Children who remain exposed to abusive parents face an increased risk of severe physical and mental health issues. Research shows that children of mothers who have suffered abuse by a male partner are at a significantly higher risk of being abused by the same perpetrator, with nearly half of all children of battered women experiencing direct abuse. These children often suffer from various health concerns, including chronic headaches, failure to thrive, gastrointestinal issues, and psychological distress—especially in relation to post-divorce visitation with the abusive parent.

SEGS has exhibited all these symptoms yet has been ignored. When SEGS does manage to contact KAC by phone, the only consistent plea is to come home—accompanied by the chilling statement that her father promises not to attempt to run her over with his truck again if KAC comes to get her. Despite this, Clay County Circuit Court (CCCC) is fully aware of the situation. Members of the Missouri Legislature are aware. The media is aware. Every official entity responsible for judicial and attorney oversight, including Mary Rhodes Russell, is aware. Yet, each of these individuals and institutions has chosen to ignore the Plaintiffs' desperate cries for help. Instead, they continue to conspire in secret meetings, working to conceal the truth and protect their own interests—ensuring that ADOSO and TJF secure re-election, Robert E.J. Gordon advances into his new family court commissioner role, and their entire corrupt scheme remains hidden.

The risks to children exposed to domestic violence extend beyond the immediate abuse. Prenatal exposure to a violent environment is linked to preterm labor, very low birth weight, and even fetal or neonatal death. Many of the harmful effects children experience post-divorce stem not just from the separation itself but from the ongoing conflict and violence that preceded and, in many cases, triggered it.

24

KAC made the firm decision to never marry SEGS—a choice that has never been regretted. She narrowly escaped his mental and physical abuse, as well as the trauma of revenge pornography, only to have the 7th Circuit Court pick up where he left off, weaponizing the legal system against her without hesitation.

The following complaint outlines, in part, the role each respondent has played—and continues to play—in this ongoing conspiracy. It details how their actions have directly impacted the Plaintiffs' rights and lives in Kansas and exposes the consequences of allowing judges to act with unchecked authority, fabricate facts, and unlawfully seize jurisdiction. This case underscores why actions committed "under the color of law" should be prosecuted as crimes in every state, with impeachment, imprisonment, and all available penalties enforced against the perpetrators.

Plaintiffs assert, based on information and belief, that each Defendant is responsible for the unconstitutional and unlawful conduct described in this complaint. This liability arises from their direct participation in the misconduct, their collaboration with others engaged in these acts, or their authorization, approval, or implementation of policies and actions that enabled these violations. Plaintiffs further allege that Defendants' actions were carried out as part of an established policy, custom, or practice within the 7th Judicial Circuit Court, the Clay County Sheriff's Department, the Kansas City Missouri Police Department, and other related agencies. Each Defendant either acted in concert with the others or served as an agent and employee of the remaining Defendants, acting within the scope of their employment or authority.

On or about April 18, 2022, September 12, 2023, and May 17, 2024, Plaintiffs delivered a Notice of Intent to Sue to each Defendant in accordance with Missouri Revised Statutes, Title XXXVI on

Statutory Actions & Torts. These notices were issued as Plaintiffs uncovered additional crimes and constitutional violations committed against them.

In his application for associate judge with the 7th Circuit, **THF** highlighted his role in authoring legislation, specifically stating: **"HB 481 Uniform Child Custody Jurisdiction Act: Over a period of four years, I carried the reformation bill for the UCCJA and was able to obtain passage of the same in 2009. This bill repealed the outdated portions of the UCCJA and enacted new provisions regarding the establishment of child custody jurisdiction, specifying priorities and factors to be considered in custody jurisdiction determinations and emergency orders. The effect of this legislation was to prevent Missouri from being a safe haven for parents who have moved their children to Missouri in violation of another jurisdiction's custody order."**

During this time, TJF served as presiding judge over CCCC. Not only was he fully aware that ADOSO, SPDVR, REJG, and SM were violating federal law and usurping jurisdiction, but he also actively aided and abetted them in breaking the very Missouri laws he claimed to have authored. While making a mockery of HB 481, TJF deceived KAC with fraudulent court orders forged by his executive secretary, Denise Banning, who falsely claimed to be a court clerk.

TJF ignored the injuries sustained by KAC and the ongoing danger SG faces, all in an effort to perpetuate the scheme and protect the falsehoods propagated by members of his judiciary.

The corruption in this court is systemic—from the top down—which explains its relentless and obsessive efforts to keep this case under the control of Clay County, MO at any cost.

Public school officials at NKCSD engaged in unlawful and discriminatory conduct against Plaintiff KAC, including:

- Prohibiting AC from picking up her minor child, SG, from Gashland Elementary pursuant to a protective restraining order (PTO) issued by Judge Kevin O'Grady in Johnson County, Kansas.

- Prohibiting AC from communicating with SG in direct violation of the PTO.

- Informing SEGS and his spouse, VLHG, of AC's presence at Gashland Elementary to retrieve SG, then allowing both Respondents to leave the school with SG, despite the PTO's explicit restrictions.

- Referring to SEGS and VLHG as SG's parents, disregarding AC's legal parental rights, and instructing AC to vacate the premises.

- Illegally enrolling SG in NKCSD despite SG not being a resident of Missouri or the school district. NKCSD continues to refuse to provide AC with any information regarding SG's enrollment.

- Security Officer (Unknown Clay County Sheriff's Deputy #1) refused to serve SEGS with the PTO, violating federal law, Clay County Sheriff's Office General Operations Policy 312.7, RsMO 455.067, and 18 U.S.C. § 2265.

- Discriminatory treatment of Plaintiffs compared to other similarly situated parents.

By retaliating against Plaintiff, NKCSD acted with deliberate indifference. District administrators and policymakers had actual and/or constructive notice that their actions—or failures to act—were substantially certain to result in constitutional violations, yet they consciously chose to disregard this risk.

NKCSD knew or should have known that banning Plaintiff would deprive them of Equal Protection rights under the law.

As a direct and proximate result of Defendants' unconstitutional actions, motivated by retaliatory animus, Plaintiff has suffered and continues to suffer:

- Extreme and severe mental and emotional trauma

- Post-traumatic stress disorder (PTSD)

- Anxiety and sleeplessness

- Behavioral changes

- Mental anguish and deterioration of health

- Pecuniary loss

- Loss of enjoyment of life

Punitive damages are warranted as Defendants' actions were motivated by evil intent and demonstrated reckless and callous indifference to Plaintiff's federally protected rights.

The Kansas long-arm statute is to be construed liberally to fully allow jurisdiction permitted by the due process clause. Volt Delta Resources, Inc. v. Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987). The Due Process Clause permits a court to exercise personal jurisdiction over a nonresident defendant as long as the defendant has established minimum contacts with the forum state. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

There are two ways to establish minimum contacts:

1. Specific Jurisdiction – A court may assert specific jurisdiction if the defendant has purposefully directed activities at residents of the forum state, and the litigation arises from injuries related to those activities. *Intercon, Inc.*, 205 F.3d at 1247 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

2. General Jurisdiction – Even if the plaintiff's cause of action does not arise directly from the defendant's forum-related activities, a court may still exercise general jurisdiction if the defendant has continuous and systematic business contacts with the state. *Intercon, Inc.*, 205 F.3d at 1247.

However, even if a defendant meets the minimum contacts requirement, the court must also determine whether exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. *Id.*

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1983 (civil rights violations), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights violations), 18 U.S.C. § 1964(c) (RICO civil remedy), and 28 U.S.C. § 1367 (supplemental jurisdiction for Missouri and Kansas state law claims) to redress the deprivation under color of law for Plaintiffs' rights, as secured by the United States Constitution.

At all relevant times, the Defendant acted under color of state law. Particularly, at all relevant times, the Defendant acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and/or the State of Kansas.

Venue is proper under 28 U.S.C. § 1391 as the acts occurred within the jurisdiction of this Court. Venue is proper under 28 U.S.C. § 1391 because the acts took place in Missouri and Kansas, Defendants reside in either Missouri or Kansas, and where Plaintiff's parental rights continued to be violated.

## PARTIES
### Plaintiffs

KAC is an adult, individual citizen of the State of Kansas and a resident of Johnson County, Kansas.

SG and MB are minor, individual citizen of the State of Kansas and a resident of Johnson County, Kansas.

### Defendants

Daren Lee Adkins (DLA) is a Davies County Court judge in the 43rd judicial circuit located at 102 N. Main St. Gallatin, Missouri 64640. DLA is a resident of the state of Missouri and resides at 29821 State Highway CC Gallatin, MO 64640. He participates in the case as Judge as more fully described herein. At all relevant times, Defendant DLA acted under the color of law and in the course and scope of his employment with Davies County Circuit and Clay County Circuit Court and otherwise appointed by Mary Rhodes Russell. He is sued in his individual and official capacities.

Stephen J. Book (SJB) is a licensed attorney and General Counsel for the North Kansas City Missouri Board of Education – Gashland Elementary. SJB is a resident of Johnson County, Kansas and resides at 12864 Sagamore Rd. Leawood, KS 66209. He participated in the case as General Counsel for NKCSD as more fully described herein. At all relevant times, Defendant SJB acted under the color of law and in the course and scope of his employment with North Kansas City School District.  He is sued in his individual and official capacities.

Children's Mercy Hospital (CMH) is a medical institution responsible for the medical care of children and adolescents. this lawsuit is brought under 42 U.S.C. § 1983 by Plaintiffs against CMH through its individual members; and its employees, Social Worker Doe #1 and Security Guard Doe #1, who at all times in their individual and official capacities (collectively, "NKCSD") for the alleged

unconstitutional conduct that resulted in an interference with parental custody and violation of a protection order. CMH's headquarters is located at 2401 Gillham Road Kansas City, MO 64108.

28 U.S.C. 455 bars Brian C. Wimes from this lawsuit. See attachment

Clay County Missouri is a governmental entity created by and established under the laws and Constitution of the State of Missouri. At all times relevant hereto, Clay County Missouri acted through its agent the Clay County Sheriff's Office and its employees.

Toni DeGoosh is the former clerk in Division 3 Clay County Circuit Court 7th judicial circuit for located at 11 South Water St. Liberty, Missouri 64068. Toni DeGoosh is a resident of the state of Missouri. She participated in the case as the law clerk for Alisha Diane O'Hara Salmon Overly as more fully described herein. At all relevant times, Defendant DeGoosh acted under the color of law and in the course and scope of her employment with Clay County Circuit Court. She is sued in her individual and official capacities.

Laura E. Elsbury (LEE) is Chief Disciplinary Counsel for the Office of the Chief Disciplinary Counsel - OCDC located at 3327 American Avenue Jefferson City, MO 65109. LES is a resident of Boone County, MO and resides at 5005 E. Dee Woods Rd. Ashland, MO 65010. She participated in the case as Chief General Counsel for OCDC and attorney for Mary Rhodes Russell as more fully described herein. At all relevant times, Defendant Elsbury acted under the color of law and in the course and scope of her employment with OCDC. She is sued in her individual and official capacities.

Timothy Jon Flook (TJF) is the Division 2 Clay County Circuit Court judge in the 7th judicial circuit located at 11 South Water St. Liberty, Missouri 64068. TJF is a resident of Clay County, Missouri and resides at 2920 NE 89th St. Kansas City, MO 64156. He participated in the case as Presiding Judge as

more fully described herein. At all relevant times, Defendant Flook acted under the color of law and in the course and scope of his employment with Clay County Circuit Court. He is sued in his individual and official capacities.

Sean Eric Gasaway, Sr (SEGS). is the biological father of S.G. and resides at 8225 North Kenwood Ave. Kansas City, Missouri 64118. Sean Eric Gasaway, Sr. is a resident of the state of Missouri. He participated in the case as Respondent and assaulter of Plaintiff Crawley as more fully described herein. At all relevant times, Defendant Gasaway acted under the color of law and in the course and scope of her employment with Clay County Circuit Court. He is sued in his individual and official capacities.

Vanita LaTisha Taylor Howard Gasaway (VLTHG) is the spouse of SEGS. She is a resident of Clay County, MO and resides at 8225 N. Kenwood Ave Kansas City, MO 64118. She participated in the case as spouse and Respondent and co-conspirator of illegal acts committed by SEGS and other defendants as more fully described herein. At all relevant times, Defendant Gasaway acted willfully, knowingly, and maliciously. She is sued in her individual and capacities.

Robert E.J. Gordon is a licensed attorney, Guardian Ad Litem (GAL), and owner of The Gordon Law Firm, LLC located at 3741 NE Troon Drive, Suite 101 Lees Summit, Missouri 64064. He participated in the case as Guardian ad Litem (GAL) as more fully described herein. At all relevant times, Defendant Gordon acted under the color of law and in the course and scope of his employment with The Robert Gordon Law Firm and Clay County Circuit Court. He is sued in his individual and official capacities.

This lawsuit is brought under 42 U.S.C. § 1983 by Plaintiffs against the Kansas City, Missouri, Board of Police Commissioners (the "Board") through its individual members; and Kansas City Missouri Police Department officers 1-10 whose names are unknown at this time in their individual and official

capacities (collectively, "KCMOPD") for the alleged unconstitutional conduct that resulted in an interference with parental custody and violation of a protection order.

Jeffrey Hamilton Harman (JHH) is a deputy sheriff with Clay County Sheriff's Department located at 12 South St. Liberty, Missouri 64068. JHH resides at 800 East 15th St. Kearney, Missouri 64060. He participated in the case as the deputy in charge of civil process for clay county and is more fully described herein. At all relevant times, Defendant Harman acted under the color of law and in the course and scope of his employment with Clay County Sheriff's Department.

Rachel Shae Holiman (RSH) is a detective with Clay County Sheriff's Department located at 12 South St. Liberty, Missouri 64068. RSH is a resident of Clay County, MO and resides at 1607 Lauren Ln Kearney, MO 64060. She participated in the case as the detective who filed a false complaint and other acts for ADOSO and SPRVD in clay county and is more fully described herein. At all relevant times, Defendant Holiman acted under the color of law and in the course and scope of her employment with Clay County Sheriff's Department.

Deborah Jean Martin (DJM) is a process server for Clay County Circuit Court 7th Judicial Circuit located at 11 South Water St. Liberty, Missouri 64068. DJM is a resident of Jackson County, Missouri and resides at 1310 N. Pearl Dr. Independence, MO 64055.  She participated in the case as the process server as more fully described herein. At all relevant times, Defendant Martin acted under the color of law and in the course and scope of her employment with Clay County Circuit Court. She is sued in her individual and official capacities.

Scott Joseph McGreevy (SJM) is a licensed attorney with the former A2J Law located at 19401 E US Highway 40 ST 130 Independence, MO 64055. SJM is a resident of Johnson County, KS and resides at 14312 W. 115th Pl. Unit #101 Olathe, KS 66062. He participated in the case as counsel for SEGS as more fully described herein. At all relevant times, Defendant McGreevy acted under the color of law and

in the course and scope of his employment with A2J Law. He is sued in his individual and official capacities.

North Kansas City School District is a public educational institution responsible for the enrollment, custody, and care of students. his lawsuit is brought under 42 U.S.C. § 1983 by Plaintiffs against NKCSD through its individual members; and its named employees who at all times in their individual and official capacities (collectively, "NKCSD") for the alleged unconstitutional conduct that resulted in an interference with parental custody and violation of a protection order.

Alisha Diane O'Hara Salmon Overly (ADOSO) is the Division 3 Clay County Circuit Court judge in the 7th judicial circuit located at 11 South Water St. Liberty, Missouri 64068. ADOSO is a resident of Clay County, Missouri and resides at 13012 Jacob Ln Kearney, MO 64060. She participated in the case as Judge as more fully described herein. At all relevant times, Defendant O'Hara acted under the color of law and in the course and scope of her employment with Clay County Circuit Court. She is sued in her individual and official capacities.

Tarah M. Shannon Palmer (TMSP) is the principal for the NKCSD - Gashland Elementary. TMSP is a resident of Clay County, Missouri and resides at 1514 Timber Ridge Dr. Liberty, MO 64068. She participated in the case as Principal for NKCSD – Gashland Elementary located at 500 NE 83rd St Kansas City, MO 64118, as more fully described herein. At all relevant times, Defendant TMSP acted under the color of law and in the course and scope of her employment with North Kansas City School District.  She is sued in her individual and official capacities.

Sherill Paige Duncan Vickers Roberts (SPDVR) is the Family Court Commissioner with the Clay County circuit Court 7th judicial circuit located at 11 South Water St. Liberty, Missouri 64068. Sherill Paige Roberts is a resident of the Clay County, MO and resides at 9918 Cameron Excelsior

Springs, MO 64024. She participated in the case as Commissioner as more fully described herein. At all relevant times, Defendant Roberts acted under the color of law and in the course and scope of her employment with Clay County Circuit Court. She is sued in her individual and official capacities.

Mary Rhodes Russell (MRR) is Chief Justice for the Missouri Supreme Court located at 207 W. High St. Jefferson City, MO 65101. MRR is a resident of St. Louis County, MO and resides at 14122 Woods Mill Cove Dr. Chesterfield, MO 63017. She participated in the case as Chief Justice as more fully described herein. At all relevant times, Defendant Russell acted under the color of law and in the course and scope of her employment with the State of Missouri – Missouri Supreme Court. She is sued in her individual and official capacities.

James W. Smith (JWS) is the Director, Administrator and Counsel for the Missouri Commission on Retirement, Removal, and Discipline located at 2190 South Macon Road Suite 201 St. Louis, Missouri 63131. He participated in the case as the director of the Commission on Retirement, Removal, and Discipline. At all relevant times, Defendant Russell acted under the color of law and in the course and scope of her employment with the State of Missouri – Missouri Supreme Court. She is sued in her individual and official capacities.

Devin M. Stepp (DMS) is a licensed attorney with the former A2J Law located at 19401 E US Highway 40 ST 130 Independence, MO 64055. DMS is a resident of Jackson County, MO and resides at 8729 E. St. John Ave. Independence, MO 64053. He participated in the case as co-counsel for SEGS as more fully described herein. At all relevant times, Defendant Stepp acted under the color of law and in the course and scope of his employment with A2J Law. He is sued in his individual and official capacities.

John Earl Teale (JET) is a deputy sheriff with Clay County Sheriff's Department located at 12 South St. Liberty, Missouri 64068. JET is a resident if Clay County Missouri and resides at 720 Old Orchard St. Excelsior Springs, MO 64024. He participated in the case as the captain for Clay County Missouri Sheriff's Department and is more fully described herein. At all relevant times, Defendant Teale acted under the color of law and in the course and scope of his employment with Clay County Sheriff's Department.

Defendant Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"), is the successor of the municipality, the City of Kansas City, Kansas ("KCK"). The Unified Government was created by and established under the law of the State of Kansas in 1997. It is authorized to sue or be sued in its own name. Its headquarters is located at 701 N. 7th Street, Kansas City, Kansas. KCK is a subdivision of the Unified Government and is located within Wyandotte County, Kansas. The Kansas City, Kansas Police Department ("KCKPD") is an agency of the Unified Government.

The edicts or acts of KCKPD's Chief of Police may fairly be said to present the official policy of KCKPD and therefore the Unified Government.

As a practical matter and due, at least in part, on KCKPD's hierarchical structure, KCKPD's detectives may also fairly be said to present the official policy of KCKPD and therefore the Unified Government. Police Chief Defendant

Janet Love Holland Wimer (JLHW) is the court reporter in Division 3 Clay County Circuit Court 7th judicial circuit located at 11 South Water St. Liberty, Missouri 64068. JLHW is a resident of Clay County, Missouri and resides at 1113 Pier St. Liberty, MO 64068. She participated in the case as the court reporter for ADOSO as more fully described herein. At all relevant times, Defendant Wimer acted

36

under the color of law and in the course and scope of her employment with Clay County Circuit Court. She is sued in her individual and official capacities.

## **CASE LAW ALLOWING SUIT & TORT CLAIM AGAINST EACH DEFENDANT**

Federal law, including the Parental Kidnapping Prevention Act (PKPA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), along with Kansas and Missouri statutes, provide clear, mandatory guidelines for child custody determinations. These laws are not discretionary—judicial authority must be exercised within the framework they establish.

Any corrupt or intentional misconduct by an official—whether by action or failure to act—results in automatic forfeiture of office and potential disciplinary action. Usurpation occurs when an official exercises powers beyond their constitutional authority. In the United States, all governmental acts must be consistent with the Constitution, which serves as the supreme law governing the delegation of power. Any act outside this delegation is null and void from inception, not just from the point at which a court declares it unconstitutional.

All individuals, including judges and citizens, have a duty to enforce legitimate official acts. However, when a conflict arises between official actions, the superior law prevails—meaning that when an official's act contradicts the Constitution, the Constitution must be upheld. Judges and citizens do not decide constitutionality; they discover it.

Therefore, every individual involved in official proceedings has a nondelegable duty to assess the constitutionality of an act, a process known as constitutional review. When performed by a judge in a case, this is referred to as judicial review.

**Jurisdiction and Judicial Authority**

The burden of proving jurisdiction lies with the party asserting it. *Bindell v. City of Harvey*, 212 Ill.App.3d 1042, 571 N.E.2d 1017 (1st Dist. 1991). Judicial cognizance refers to a judge's obligation to act on legal matters without requiring formal proof. *Black's Law Dictionary, 5th Ed., p. 760*.

Jurisdiction is the legal authority by which courts and judicial officers make decisions. *Board of Trustees of Firemen's Relief & Pension Fund of City of Marietta v. Brooks*, 179 Okl. 600, 67 P.2d 4, 6; *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641; *State v. Barnett*, 110 Vt. 221, 3 A.2d 521, 526.

**Allegations of Fraud and Jurisdictional Overreach**

Upon information and belief, Defendants—SPDVR and ADOSO—colluded to defraud the court by refusing to hold a hearing and failing to properly notify the home state of Kansas. Temporary custody was wrongfully awarded to SEGS. Defendants knowingly and deliberately:

- Exceeded their authority,

- Usurped jurisdiction from Kansas,

- Ignored Plaintiff's motions challenging personal and subject-matter jurisdiction,

- Converted temporary custody orders into permanent ones,

- Illegally designated Missouri as the home state, and

- Asserted that the trial court had jurisdiction to make an initial custody determination.

**Missouri UCCJEA and Jurisdictional Limits**

Under Missouri's UCCJEA, RSMO Article II 452.740, a Missouri court may only assume jurisdiction over an initial child custody determination if:

1. Missouri was the child's home state at the time the case began or within six months prior, provided a parent remains in Missouri.

2. No other state has jurisdiction, or another court has declined jurisdiction in favor of Missouri as a more appropriate forum.

3. The child and at least one parent have a significant connection with Missouri beyond mere physical presence, and substantial evidence exists in Missouri regarding the child's care and well-being.

4. All other potential jurisdictions have declined to exercise authority.

Subsection 1 of this statute serves as the exclusive jurisdictional basis for a Missouri court's custody determination. Furthermore, the child's physical presence in Missouri does not establish jurisdiction.

## Constitutional and Legal Precedents

Judges are obligated to exercise jurisdiction when granted and may not assume jurisdiction beyond legal limits. *Norton v. Shelby County*, 118 U.S. 425, 442. Any attempt to enforce judicial authority beyond these boundaries is an act of lawless violence. An unconstitutional act:

- Confers no rights,
- Imposes no duties,
- Affords no protection,
- Creates no office,
- Is legally inoperative as if it had never been passed.

**<u>Failure to Fulfill Official Duties</u>**

Had the Defendants properly fulfilled their duties, including supervising the Guardian ad Litem (GAL), REJG, and ensuring that REJG performed services billed at over $5,000, the issue would have been resolved as early as 2022. A simple home visit by the GAL in Kansas would have clarified jurisdiction, preventing further legal disputes. Plaintiff's Kansas address, Kansas vehicle registrations, Kansas school registrations, Kansas business registrations, Kansas church affiliations, Kansas voting record, etc. are all available online through the same google search the GAL used to present the false criminal convictions against KAC. Instead, Defendants intentionally obstructed Plaintiff's access to the courts, violating rights protected under:

- U.S. Constitution, Article I, Section 9 – Guaranteeing access to courts.
- Article I, Section 22 – Guaranteeing the right to trial by jury.

Plaintiff invokes the following constitutional provisions:

A) Article I

- Section 2: Right to equal treatment under the law.
- Section 5: Religious freedom and liberty of conscience.
- Section 9: Access to courts.
- Section 10: Due process rights.
- Section 14: Justice without sale, denial, or delay.
- Section 32: Rights of crime victims.

B) Article II

- Establishing separation of powers to prevent overreach.

40

C) Article V

- Section 6: Authority of the Supreme Court to assign judges.

- Section 8: Duty of the Chief Justice to supervise lower courts.

- Section 11: Transfer of cases to proper jurisdiction when initially filed in the wrong court.

- Section 15: Presiding Judge's duty to supervise court staff.

- Section 18: Right to judicial review of administrative decisions affecting private rights.

D) Article VII

- Section 11: Duty to uphold the oath of office and support the U.S. Constitution.

Defendants willfully disregarded their legal and constitutional obligations, obstructing Plaintiff's access to a fair judicial process. Their failure to follow proper jurisdictional procedures, refusal to consider Plaintiff's motions, and unlawful transfer of custody jurisdiction to Missouri constitute judicial misconduct and a violation of Plaintiff's constitutional rights.

Plaintiff demands appropriate legal remedies, including review of jurisdictional errors, correction of custody determinations, and accountability for all officials who acted beyond their lawful authority.

## JUDICIAL IMMUNITY AND EXCEPTIONS

Judges are expected to maintain a high standard of judicial performance and when they violate the Constitution, they cease to represent the government become liable for damages and lose any immunity they may think they have.

Judges are generally protected by judicial immunity, which shields them from lawsuits for actions taken in their official capacity.

However, immunity does NOT apply when: A judge acts completely without jurisdiction (Stump v. Sparkman, 435 U.S. 349 (1978)); A judge engages in criminal behavior, corruption, or conspiracy (Dennis v. Sparks, 449 U.S. 24 (1980)); and when a judge violates constitutional rights in a way that is not a judicial act (Forrester v. White, 484 U.S. 219 (1988)).

Judicial immunity applies when two requirements are met: jurisdiction over the dispute, and a judicial act. As to the first requirement, a judge lacks immunity when he has acted in the clear absence of all jurisdictions, and not merely more than his jurisdiction. The egregious acts committed by SPDVR and ADOSO, were not pursuant to any process of law through UCCJEA (let alone due process of law); were not done on the record as required by UCCJEA, pursuant to any finding of fact, conclusion of law pursuant to UCCJEA and PKPA, order or judgment of the court pursuant to UCCJEA and PKPA, or any record whatsoever as they continue to refuse to participate in any UCCJEA conference as required by UCCJEA; do not appear in any court filing or record; and did not occur with the consent of the parties to the modification case.

Whereas, officials and even judges have no immunity See, Owen vs. City of Independence, 100 S Ct. 1398; Maine vs. Thiboutot, 100 S. Ct. 2502; and Hafer vs. Melo, 502 U.S. 21; officials and judges are deemed to know the law and sworn to uphold the law; officials and judges cannot claim to act in good faith in willful deprivation of law, they certainly cannot plead ignorance of the law, even the Citizen cannot plead ignorance of the law, the courts have ruled there is no such thing as ignorance of the law Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958).

"No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.  U.S. v. Throckmorton, 98 US 61   Under Missouri law, " [t]he doctrine of official immunity shields public officers and state officials from civil liability for injuries arising out of their discretionary acts, functions, or omissions performed in the exercise of their official

42

duties." Harris v. Munoz, 43 S.W.3d 384, 387 (Mo.Ct.App.2001).   Generally speaking, discretionary acts are those acts involving the official's exercise of reason in developing a means to an end, and "the employment of judgment to determine how or whether an act should be performed or a course pursued." Id.

As the district court recognized, however, official immunity does not apply where the official's discretionary act was undertaken in bad faith or with malice. Davis v. Bd. of Educ., 963 S.W.2d 679, 688-89 (Mo.Ct.App.1998). The district court ruled that Sheriff Holloway was not entitled to public official immunity under Missouri law because the facts, viewed in the plaintiffs' favor, demonstrated that the sheriff's conduct was corrupt or otherwise undertaken in bad faith. US Court of Appeals for the Eighth Circuit - 316 F.3d 777 (8th Cir. 2003)

The judicially created doctrine of official immunity "is intended to provide protection for individual government actors who, - despite 'limited resources and imperfect information, must exercise judgment in the performance of their duties." Southers v. City of Farmington, 263 S.W.3d 603, 611 (Mo. banc 2008). "Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." Id.

 Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course- of their official duties for the performance of discretionary acts. Southers, 263 S.W.3d at 610; Woods, 471 S.W. 3d at 391. It does not provide public employees immunity for torts committed when acting in a ministerial capacity. Southers, 263 S.W.3d at 610; Woods, 471 S.W.3d at 392. "Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." Southers, 263 S.W.3d at 610. A discretionary act requires the exercise of reason in adapting the means 'to an end and of discretion in determining how or whether an act should be done, or course pursued. Id.; Woods, 471 S.W.3d at 392.

43

In contrast a ministerial function is one of a clerical nature that a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. Id.

A public employee is only liable for a ministerial act if the conduct violates either a duty imposed by statute or regulation or a departmentally mandated duty. A.F. v. Hazelwood Sch. Dist., 491 S.W.3d 628, 631 (Mo. App. E.D. 2016); Woods, 471 S.W.3d at 392; Nguyen, 353 S.W.3d at 730. A departmentally mandated duty may arise from sources other than statutes or regulations such as departmental rules, the orders of a superior, or the nature of the employee's position. A.F., 491 S.W.3d at 63132; Woods, 471 S.W.3d at 392-93; Nguyen, 353 S.W.3d at 730.

Whether an act is discretionary or ministerial is a determination made on a case-by-case basis considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. Southers, 263 S.W.3d at 610; Woods, 471 S.W.3d at 393. Based on official immunity, in likely recognition of the fact that the defense does not apply to intentional torts. "Even a discretionary act ... will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008) (footnote omitted). Summary judgment properly granted to football coach on his defense of official immunity because "the record did not demonstrate a rule, regulation, policy, or direct order of a superior 12 that was violated" in supervising football practice. Elias v. Davis, 535 S.W.3d 737 (Mo. Ct. App. 2017)

In the case, N.W.M. through J.M. v. Langenbach, A.3d (Pa. 2024), 2024 WL 2788173, the Pennsylvania Supreme Court determined that GALs are not immune from legal malpractice claims holding that:

(Pa. May 31, 2024) GALs are not entitled to judicial immunity from legal malpractice claims. The court noted, "[a] dependency GAL is a lawyer with professional responsibilities to the client pursuant to the Rules of Professional Conduct. It is counterintuitive to insist that eliminating the possibility of malpractice suits is the way to incentivize proper representation of a child. Like adults, children deserve competent representation, as well as recourse if they do not receive it."

The *Ex Parte Young* Doctrine allows individuals to sue state officials in their official capacity for prospective injunctive relief (a court order to stop ongoing violations of federal law).

This exception is crucial for enforcing federal law, as it allows individuals to seek court orders to prevent state officials from continuing to violate their rights.

## CRIMINAL PROSECUTION OF JUDGES UNDER FEDERAL & STATE LAW

A judge can be prosecuted under 18 U.S.C. § 242 for "Deprivation of Rights Under Color of Law" if they:

1. Willfully act outside their jurisdiction to deny someone their rights.

2. Knowingly issue illegal orders outside their judicial authority.

3. Conspire with others to commit judicial fraud (42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights).

Kansas follows the same general rule as federal law—judges are immune unless they act outside their jurisdiction.

Under K.S.A. 60-212(b)(1), a ruling made without jurisdiction is void and cannot be enforced.

Under, K.S.A. 21-6002 – Official Misconduct, a judge can be charged with a felony for knowingly acting outside their judicial authority.

Under K.S.A. 21-5401 – Conspiracy or Corruption, if a judge conspires to violate someone's rights, they can be prosecuted.

Missouri follows the same standard as federal and Kansas law.

Judges are immune unless they act outside their jurisdiction (McCoy v. Rivera, 926 S.W.2d 78 (Mo. App. 1996)).

Under RsMo 576.040 – Official Misconduct, a judge in Missouri who knowingly acts outside their jurisdiction or abuses their power can be charged with official misconduct, a Class A misdemeanor or felony.

Under RsMo 575.010 – Tampering with a Judicial Proceeding, if a judge issues illegal rulings to obstruct justice, they can be charged.

## IMPEACHMENT & REMOVAL

Federal judges can be **impeached** and removed by Congress and/or the state legislature if they repeatedly act outside their jurisdiction.

Judges in Kansas can be removed for misconduct under the Kansas Commission on Judicial Conduct (K.S.A. 20-2609)

Judges in Missouri can be removed under Article V, Section 24 of the Missouri Constitution.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1. KAC and SG have been residents of Kansas since January 2020.

2. On March 3, 2022, Defendant Sean Eric Gasaway, Sr. filed for child custody in Missouri under the Uniform Parentage Act.

3.  In case WD75266, a father attempted to change a custody order in Missouri using this same statute.

4.  The Western District Court of Appeals (WDCOA) ruled that Missouri lacked jurisdiction under UCCJEA, UIFSA, and UPA, affirming that child custody jurisdiction belonged to California.

5.  Kansas has sole jurisdiction over this case under the same statute.

6.  Plaintiff's first challenged jurisdiction in May 2022 – according to federal and state law - but it continues to be ignored.

7.  Federal, Kansas, and Missouri laws all require that jurisdiction be determined before a case proceeds.

8.  Each of Plaintiff's motions entered from 2022 thru 2025, as well as the motions entered by Plaintiff's past attorneys, remain unruled upon.

9.  Federal Rule of Civil Procedure 12(b)(1) – Subject Matter Jurisdiction state: A motion to dismiss for lack of subject matter jurisdiction can be raised at any time. If a court lacks jurisdiction, it must dismiss the case immediately.

10. This applies to all cases, including child custody disputes that invoke federal law or interstate jurisdictional issues.

11. The U.S. Supreme Court Precedent – "Jurisdiction First" Principle was established in the following cases:
    a.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)
        The U.S. Supreme Court ruled that jurisdiction is the first issue a court must decide before addressing the merits of any case.
    b.  Pennoyer v. Neff, 95 U.S. 714 (1878)
        Establishes that any judgment made without jurisdiction is void.

12. Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) – 28 U.S.C. § 1738A (Parental Kidnapping Prevention Act, PKPA) is adopted by all states, including Kansas and Missouri, and requires that jurisdiction over child custody matters must be determined first before any custody orders are issued.

13. Missouri Rule of Civil Procedure 55.27(a)(1) states that when a Motion to Dismiss for Lack of Jurisdiction is presented to the court, jurisdiction must be determined before any other legal issues are addressed.

14. CCCC failed to do this because they are aware that any case filed in a court without jurisdiction must be dismissed and the dire consequences when it does not.

15. RsMo 452.740 – UCCJEA in Missouri states that Missouri courts must follow the UCCJEA and determine jurisdiction first before ruling on a child custody case.

16. Missouri courts cannot issue and/or modify another state's custody order unless they have proper jurisdiction.

17. RSMo 506.500 states that Missouri courts must satisfy the Personal Jurisdiction Requirement and confirm jurisdiction over the parties before proceeding.

18. Missouri Case Lawis clear and was established in the following cases:

    a. State ex rel. J.M. v. Juvenile Officer, 103 S.W.3d 72 (Mo. 2003)

    Missouri Supreme Court ruled that jurisdiction must be determined first before a case can move forward.

    b. McCoy v. Rivera, 926 S.W.2d 78 (Mo. App. 1996)

    A court ruling without jurisdiction is void and unenforceable.

19. In child custody cases, the UCCJEA (RSMo 452.740 & K.S.A. 23-37,201) ensures jurisdiction is the first issue resolved.

**20. Any court order made without jurisdiction is void and legally unenforceable.**

21. On November 29, 2022, Missouri courts ignored UCCJEA and PKPA federal laws, unlawfully assumed jurisdiction from Kansas, wrongfully declared Missouri as the home state, and issued temporary child custody orders.

22. SPDVR, usurped jurisdiction from Kansas and made an initial child custody determination without legal authority.

23. ADOSO, acting without jurisdiction or immunity, personally upheld these orders without holding a hearing on the temporary orders, violating federal law.

24. Robert E.J. Gordon, the guardian ad litem assigned to the case, misled the court proceedings, detained Plaintiffs in the courtroom, and declared he had already decided the case.

25. REJG threatened that if KAC did not allow SG to leave with SESG to an undisclosed location, she would lose custody.

26. REJG followed through on this, using falsified information from an unreliable Google search while disregarding the respondent's own custody petition, which stated that KAC's residence should remain the primary address for schooling and mailing.

27. CCCC and REJG also ignored SEGS' pleading which stated that Plaintiff's resided in Kansas and were residents of Kansas.

28. The temporary custody order, drafted by SPDVR and REJG, falsely stated that KAC appeared pro se, though she was represented by counsel – Attorney David Breon - who had filed a motion to dismiss for lack of jurisdiction.

29. This misrepresentation concealed multiple constitutional violations and due process breaches that could warrant disbarment and/or impeachment.

30. Upon information and belief, ADOSO, SPRDV and their clerks, removed UCCJEA documents from records given to Plaintiffs, obscuring the fact that the court knew Plaintiffs resided in Kansas, as confirmed by SESG's sworn testimony.

## Background and Legal Violations

31. Despite this precedent, Defendants unlawfully usurped jurisdiction, declared Missouri as the home state, and separated SG from her mother and siblings for almost three (3) years.

32. Defendant's petition originally requested joint custody with KAC's Kansas address as the primary residence.

33. Attorney Scott McGreevy falsely claimed that KAC was personally served in Kansas by private process server Deborah Martin (#PPS23-0106).

34. In reality, and as shown in the video and still pictures above, Martin did not serve KAC or any adult at the residence as required by Missouri law.

35. SG's babysitter in Kansas returned improperly served court documents left at her home, notifying the court and McGreevy via certified mail.

36. The babysitter informed the court that KAC and SG lived elsewhere, and her home was only a neutral exchange site per mediation.

37. She also provided video footage from her Ring camera showing Martin abandoning the documents.

38. KAC was unaware of the proceedings until May 14, 2022, when Defendant mentioned an upcoming court date during a call with SG.

39. Defendant had frequent contact with SG despite claims to the contrary.

40. On May 16, 2022, KAC contacted the court and filed a motion contesting improper service.

41. The court proceeded with hearings and a trial date without notifying KAC.

42. The court and McGreevy continued sending paperwork to the babysitter's address despite knowing it was incorrect.

43. On or about September 16, 2022, KAC filed a motion for continuance after learning from her four-year-old daughter, through SEGS, that court was scheduled for September 20, 2022.

44. KAC informed the court she was out of state handling her late father's estate and had not received proper notice.

45. KAC drove 18 hours from Alabama and appeared in court on September 20, 2022.

46. SPRDV denied her motions for continuance and dismissal despite acknowledging she was not properly served.

47. McGreevy insisted she should have filed a motion to quash instead of a motion to dismiss.

48. KAC, representing herself, was unfamiliar with legal procedures.

49. Commissioner Roberts disregarded improper service and stated McGreevy could simply re-serve her in court.

50. KAC testified about Defendant's false claims, history of abuse and informed the court that SEGS had attempted to run her and SG over with his truck in November 2021, with a babysitter as a witness.

51. SPRDV allowed McGreevy to choose a Guardian ad Litem (GAL) without KAC's input.

52. KAC provided her Kansas mailing address as requested.

53. KAC later retained Jungle Law Firm and returned to Alabama.

54. The GAL never contacted KAC via phone or mail.

55. On November 27, 2022, KAC hired attorney David Breon after learning that her prior counsel had not filed a notice of appearance.

56. On November 28, Breon filed motions for continuance and to quash service.

57. KAC was instructed to bring SG to court, requiring her to drive back from Alabama.

58. KAC appeared in court with SG on November 29, 2022.

59. The GAL insisted SG remain with Defendant for two weeks before he would meet her.

60. KAC refused, citing Defendant's recent release from jail and his failure to provide an address.

61. SG had never spent the night with Defendant before, and KAC had a scheduled flight at 4 PM.

62. The GAL threatened that KAC would not be allowed to leave the state with SG and that her motions would be denied.

63. KAC called her attorney, confirming that the court was aware he was in trial.

64. She informed the court that her attorney would not be present and again requested a continuance.

65. Commissioner Roberts and the GAL denied the request, refusing to consider any motions filed by KAC or her attorney.

66. KAC was forced to proceed without legal representation in a "trial by ambush."

67. Neither KAC nor SG had met with the REJG before, during, or after the trial.

68. REJG provided false testimony about KAC's job, family, and personal matters.

69. REJG met secretly with SPRDV and Defendant's attorney without KAC present, whispering when she approached.

70. During recess, KAC recorded them discussing the case at the judge's bench.

71. When trial resumed, KAC was denied access to evidence, parenting plans, and other documents used against her.

72. She testified that Defendant had not followed the mediation schedule.

73. SPRDV found no record of completed mediation.

74. KAC was denied the right to question Defendant or object to testimony.

75. She was also denied the right to call a witness who had seen SEGS's abuse.

76. When KAC mentioned SEGS's criminal history, REJG and SPDVR instructed her to remain silent.

77. The court awarded Defendant physical custody, supervised visitation for KAC, and child support without sufficient evidence or due process.

## Appeal and Ongoing Issues

78. KAC filed a Notice of Appeal on December 1, 2022.

79. She filed a Motion for Rehearing and a notice of hearing on December 6, 2022.

80. Judge O'Hara denied the motion on December 7, 2022.

81. KAC later learned that the trial court no longer sent appeal notices electronically, only by mail.

82. When she contacted the court, they could not locate her appeal notice.

83. Plaintiff contacted the Court of Appeals (WDCOA) and was informed that the information previously given was incorrect.

84. Plaintiff then called the trial court while a WDCOA employee was on the line and received the same confirmation.

85. The trial court clerk initially maintained her stance but changed her story after learning that the WDCOA employee was on the call. She then stated that she had sent Plaintiff's appeal both electronically and via FedEx.

86. WDCOA received Plaintiff's appeal on December 9, 2022.

87. Plaintiff filed a Motion to Stay Judgment with WDCOA on December 12, 2022.

88. The judgment became final on December 16, 2022.

89. Judge Gary D. Witt denied Plaintiff's motion on December 27, 2022.

90. Plaintiff received threatening text messages and phone calls targeting both herself and her minor child from Defendant, leading to an order of protection against Defendant.

91. On January 15, 2023, SEGS physically attacked Plaintiff, resulting in felony aggravated domestic assault charges against him.

92. Despite the restraining order, SEGS continued to violate it and denied Plaintiff access to the minor child, including on her birthday, January 9, 2023.

93. Plaintiff retained legal counsel and filed a Motion for a New Trial on January 17, 2023.

94. The Motion for a New Trial was scheduled for March 14, 2023.

95. On February 17, 2023, REJG filed a motion to continue, requesting that the hearing be delayed by another two weeks.

96. Plaintiff objected to this delay, asserting that the REJG's motive was to prolong proceedings to falsely establish residency for the minor child in Missouri—an issue that was neither proven at trial nor originally in question.

97. Plaintiff's attorney sought to withdraw from the case after Plaintiff opposed the hearing delay, arguing that the REJG was prohibited from participating as he had acted as both an attorney and a witness during trial, violating Rule 4-3.7.

98. Plaintiff was hospitalized and unable to participate in the appellate process, leading to the dismissal of her case on February 22, 2023.

99. On February 27, 2023, Plaintiff filed a countermotion requesting that the trial court deny her attorney's withdrawal because the attorney had not completed agreed-upon tasks, violating Missouri Rules.

100.    ADOSO approved Plaintiff's attorney's withdrawal and falsely reported on CaseNet that Plaintiff arrived in court around 9:30 a.m.

101.    However, Plaintiff arrived at court at 9:08 a.m., her motion was denied, and ADOSO provided her with a legal aid referral card.

102.    Plaintiff called Legal Aid from her vehicle at 9:18 a.m., making it impossible for her to have arrived in ADOSO's courtroom around 9:30 a.m.

103.    On March 28, 2023, Plaintiff requested a continuance and appeared at the hearing pro se.

104.    Plaintiff informed the court that Legal Aid was unable to assist her due to lack of notice.

105.    Plaintiff was unable to retain new counsel and was unable to work due to injuries sustained from Defendant's attack.

106.    Plaintiff's request for a continuance and Motion for a New Trial were denied, but Judge O'Hara permitted her to file a Motion to Amend.

107.    Plaintiff addressed the court regarding the REJG's interference and delay tactics but did not file any motions.

108.    REJG still had not spoken to Plaintiff or the minor child.

109.    Plaintiff requested a copy of the documents ADOSO was referencing while consulting with the RELG, who she appeared to wink at before denying Plaintiff's motion.

110.    Plaintiff raised concerns about the REJG's unprofessional behavior, including his dismissive attitude and refusal to provide her with any reports or documents he had submitted to the court.

111.    ADOSO, following REJG's and Defendant's attorney's recommendations, denied Plaintiff's motion.

112.    Plaintiff requested that ADOSO address subject-matter jurisdiction, but she was ignored and dismissed from the courtroom.

113.    Plaintiff inquired about the removal of the hearing from CaseNet but received no response.

114.    On March 29, 2023, the hearing date was re-added to CaseNet.

115.    On April 6, 2023, Plaintiff filed a Notice for Hearing along with Motions to Amend Judgment, Set Aside & Vacate Judgment, and Disqualify the GAL, scheduling a hearing for April 19, 2023, based on available dates submitted by REJG.

116.    REJG later requested that the hearing be rescheduled to April 29, 2023.

117.    On April 21, 2023, REJG emailed Plaintiff and the trial court, stating, "I meant to put a 1 instead of a 2, oops."

118.    The hearing was subsequently rescheduled for May 9, 2023.

119.    Plaintiff informed the trial court of a recent attack by Defendant and explained that she was cooperating with KCKPD and detectives, who had instructed her not to mention the incident until they were prepared to act.

120.    On April 18, 2023, Plaintiff filed an Emergency Motion for Temporary Custody and a Motion to Modify, including a copy of the restraining order against Defendant, police reports, contact information for detectives, medical records from her attack, and previous police reports dating back to 2016.

121.    Plaintiff informed the court that REJG had still not investigated the abuse allegations he was hired to assess and had willfully ignored Defendant's violent history, which led to Plaintiff's current injuries.

122.    ADOSO, according to her clerk, refused to grant an emergency hearing, stating she "did not like the way Plaintiff's motion looked.

123.    ADOSO stated she would address the issues at the May 9 hearing.

124.    Instead, ADOSO filed Plaintiff's motion under a new case number (23CY-CV03732) and scheduled a hearing for April 24, 2023, after Plaintiff stressed the urgency of the matter.

125.    When Plaintiff appeared for court on April 24, 2023, she was informed that the hearing had been canceled.

126.    Plaintiff was told she was not owed an explanation and was asked to leave the courtroom.

127.    Plaintiff appeared for the May 9, 2023, hearing accompanied by relatives from multiple states, including her 96-year-old grandmother, as well as daycare providers, only to be informed that the court session had been canceled.

128.     Plaintiff was again told she was not owed an explanation.

129.     Plaintiff contacted the then presiding judge TJF regarding the repeated cancellations and missing motions on CaseNet.

130.     After May 9, 2023, ADOSO court altered CaseNet, replacing the May 9 hearing and adding notes to prior entries from April 2023.

131.     Sometime after May 9, an entry was added to CaseNet stating, "As Motion for New Trial has been ruled upon, the Motion for Temps/Ex Parte shall be heard in Division 8 where the underlying Paternity action is assigned. AO."

132.     After Plaintiff contacted TJF, ADOSO's court closed Case #23-CV03732, citing that it had been opened in error.

133.     Plaintiff's case was then reassigned to SPDVR courtroom, the original trial court.

134.     Plaintiff refiled motions for the judges to recuse themselves and to address previously filed motions.

135.     Plaintiff requested both judges address their bias, conflict of interest, and Defendant's statement that he was paid by "Robert's company" and guaranteed custody of the minor child.

136.     Plaintiff informed TJF's office of the evidence, including recordings, and the Letters of Intent to Sue sent to the court, yet her case information remained missing from CaseNet.

137.     After weeks of being ignored, Plaintiff contacted SPDVR's clerk from an out-of-state phone number.

138.     The clerk confirmed receipt of Plaintiff's motions and paperwork but stated she would not file them, citing that the case was closed per the Court of Appeals.

139.     Plaintiff informed Michelle (ADOSO's clerk) that she lacked the authority to refuse filing motions, as ADOSO had permitted Plaintiff to file a motion to amend. Additional motions were submitted after evidence of fraud emerged.

140.     Michelle dismissed Plaintiff's concerns, stating other paperwork had been filed incorrectly but that it did not matter because she would not process any of Plaintiff's documents. She then ended the call.

141.    Plaintiff reported Michelle's refusal to file motions and other unethical conduct to the Department of Justice and other legal authorities, providing recordings as evidence.

142.    Plaintiff emailed Michelle and relevant authorities, addressing concerns about her behavior and requesting corrective action.

143.    On May 24, 2023, Plaintiff filed a notice of appeal after Michelle refused to enter the correct dates and docket all submitted motions.

144.    Plaintiff contacted the WDCOA clerk, inquiring whether she could file the notice of appeal directly since the trial court had failed to docket her motions and the clerks refused to assist her.

145.    Plaintiff's request was denied, and she was advised to contact the clerk's office.

146.    On June 5, 2023, Plaintiff spoke with the clerk responsible for filing appeals and transmitting documents to WDCOA.

147.    The clerk, who refused to identify herself, stated that Plaintiff's paperwork was on her desk but would not be filed until Plaintiff paid fees, despite her indigency status being approved.

148.    Plaintiff cited the relevant statute confirming she was not required to pay fees. The clerk then shifted her reasoning, claiming she would not file the appeal because Plaintiff had not attached the judgment.

149.    The clerk further refused to look up the judgment in the system, mocked Plaintiff's concussion-related speech impairment, and instructed her to bring physical copies of the judgment and motions to the courthouse.

150.    On June 6, 2023, Plaintiff contacted Lee Bucksath, head clerk of the trial court, along with other legal authorities, informing them that her appeal had been filed on May 24, 2023, but had not been entered into CaseNet.

151.    Plaintiff submitted recordings and additional copies of her stamped motions and notice of appeal.

152.    That same day, June 6, 2023, Plaintiff's appeal (Case #WD8317) was transmitted to WDCOA, and she was contacted regarding documents for the Record on Appeal and transcripts.

153.    Court reporter Janet Wimer informed Plaintiff that the transcripts would be completed quickly once payment was received.

154.    Plaintiff informed Janet Wimer of her indigency status via email.

155.    Despite multiple follow-ups, Janet Wimer ignored Plaintiff's calls and emails.

156.    Plaintiff contacted Lee Bucksath and other legal authorities due to the lack of response and failure to receive requested documents.

157.    Plaintiff notified the trial court that WDCOA claimed it lacked jurisdiction over her case, citing incorrect CaseNet entries pursuant to Rule 84.

158.    Plaintiff again requested CaseNet entries be corrected to prevent her appeal from being denied due to fraudulent actions by 7th Circuit employees.

159.    On June 7, 2023, TJF and the entire 7th Circuit recused themselves after SPDVR recused herself from Case #19CY-CV04969-04 while still ignoring motions from trial Case #19CY-CV04969-03.

160.    The Missouri Supreme Court was asked to appoint a judge outside the circuit.

161.    On June 7, 2023, CaseNet reflected only this recusal entry for Case #19CY-CV04969-04.

162.    On June 21, 2023, Judge Wilson assigned Judge Fincham from the 6th Circuit to the case.

163.    Plaintiff contacted Judge Flook's secretary, Denise Banning, who was assigned as the liaison between Plaintiff and Judge Fincham.

164.    While Denise Banning initially communicated with Plaintiff, she later ceased all contact, making it impossible for Plaintiff to file motions or schedule hearings with Judge Fincham.

165.    WDCOA ultimately denied Plaintiff's appeal due to jurisdictional issues.

166.    Plaintiff informed the trial court of WDCOA's decision and again requested corrections to the CaseNet entries.

167.    Instead of correcting the records, the trial court added further incorrect entries, creating additional confusion for the appellate court.

168.    Plaintiff discovered that Judge Gary D. Witt chaired the committee responsible for interviewing and selecting candidates for judicial vacancies in the 16th Circuit—where GAL Robert Gordon had applied.

169.    Plaintiff also uncovered that REJG falsely stated on his application that he had never participated in cases before WDCOA.

170.    Plaintiff provided WDCOA with evidence of cases in which REJG had participated, given oral arguments, and had been reprimanded for misconduct, including presenting false witnesses and favoring one parent over another.

171.    Plaintiff petitioned Judge Gary D. Witt to recuse himself after learning that he endorsed REJG for a judicial vacancy despite knowing of his fraudulent conduct.

172.    Judge Witt sustained Plaintiff's motion and recused himself.

173.    WDCOA denied Plaintiff's appeal and refused to void the judgment despite having jurisdiction to do so.

174.    Plaintiff filed a Protection from Abuse (PFA) petition in Johnson County, Kansas, her state of residence. Kansas was and has always been the only state with authority to make an initial custody determination.

175.    Plaintiff submitted video evidence from Defendant Gasaway's daughter, Seaneal Gasaway, showing Defendant endangering the minor child by allowing her near Sean Eric Gasaway, Jr., who had an active burglary warrant in Independence, MO.

176.    The video also showed the minor child sitting outside with Defendant's adult children and their mother—who struggles with addiction—while gunshots were fired. The group celebrated the gunfire, encouraging viewers to pay attention to them.

177.    Plaintiff also submitted footage of Sean Eric Gasaway, Jr. forcing a catfish to drink beer on the same day.

178.    Plaintiff provided these videos to the trial court and all involved parties, urging the court to void the judgment as she pursued a Kansas PFA.

179.    Plaintiff submitted the PFA to the minor child's school principal, Tarah Palmer, who, despite knowing of the protection order, contacted Plaintiff's abuser.

180.     Tarah Palmer violated the protection order by allowing Defendant to take the minor child from school, placing both Plaintiff and law enforcement in danger.

181.     The following day, SDEGS and his wife kept the minor child out of school.

182.     Steve Book, the school's attorney, defended Tarah Palmer's violation of the PFA.

183.     Plaintiff was informed that Johnson County courts would not recognize her PFA or any orders from Judge Kevin O'Grady due to the case originating in Kansas.

184.     Plaintiff filed criminal complaints against Tarah Palmer, Steve Book, and the deputy present for interfering with custody.

185.     Plaintiff sent a Letter of Intent to Sue to Tarah Palmer, Steve Book, and the school district.

186.     Defendant, Steve Book, and an unidentified individual attempted to contact the Johnson County Court anonymously, using the void judgment to discredit Plaintiff.

187.     Defendant was provided with a copy of the court order at the minor child's school and again at a doctor's appointment on September 12, 2023. Despite this, he refused to relinquish custody. Kansas City Police Department officers Dougherty and Goodfield also refused to assist or acknowledge the Kansas order.

188.     On September 18, 2023, WDCOA denied Plaintiff's motion to file an out-of-time appeal, citing a lack of jurisdiction due to incorrect data in CaseNet.

189.     Plaintiff has no further legal recourse due to the Defendant and his associates' refusal to correct the transcripts and CaseNet records.

190.     Additionally, TJF disqualified the entire 7th Circuit without transmitting the order to the Missouri Supreme Court.

191.     As stated in TJF's order, court employees continue to ignore Plaintiff's calls regarding her case.

192.     Plaintiff has contacted the Missouri Supreme Court 47 times since October 2023, seeking information on judge reassignment.

193.     As of January 2, 2024, the supreme court had neither assigned a judge nor responded to any of Plaintiff's calls or emails.

194.     Judge Thomas Fincham, formerly of the 6th Circuit, had been appointed by Justice Wilson after the disqualification of the 7th Circuit.

195.     Judge Fincham, was scheduled to retired on December 31, 2023, leaving Plaintiff without a judge or a means to challenge the judgment, which was issued outside the trial court's jurisdiction and should never have been heard in Missouri.

196.     KAC assumed this was the reason he did not respond,

197.     KAC later learned that Fincham did not respond because he chose not to.

198.     Plaintiffs have now endured four holiday seasons—since November 29, 2022—without contact with the minor child due to the unlawful and egregious actions of the Defendants.

199.     Plaintiff has suffered cruel and unusual punishment, while her children have been deprived of their right to maintain close family bonds.

200.     The attack by SEGS. left Plaintiff with severe injuries, including a concussion, further hindering her ability to protect S.G.

201.     Defendants' actions—including unlawfully seizing jurisdiction, refusing to file or properly process Plaintiff's motions, destroying evidence, submitting inaccurate transcripts, withholding audio recordings, and refusing to honor a valid Kansas custody order—have not only obstructed the appeals process but rendered it impossible as long as they refuse to act on open motions that have been on the docket since May 2022.

202.      Given the ongoing misconduct, Plaintiff will likely continue to suffer irreparable harm unless a higher court intervenes.

203.     Judge Mary Rhodes Russell MRR) appointed Daren L. Adkins (DLA) to the case, despite the 7th Circuit's prior disqualification, and did so with full knowledge that Adkins was a former Clay County judge.

204.     Beginning December 20, 2022, Missouri Division of Social Services (MDSS) and Missouri Family Support Division (MFSD), through Clay County Child Support Division (CCCSD), unlawfully and fraudulently imposed and collected child support payments from KAC.

205.     This was done in breach of security under RsMo 454.400 and in direct violation of Plaintiff's federally protected rights.

206.     Fraud and injury were reported between April 2023 and July 2024. CCCSD subsequently issued a fraudulent arrest warrant for KAC and suspended her Kansas driver's license.

207.     Between January 2022 and July 2024, KAC repeatedly alerted the court to fraud by ADOSO and SPDVR. She was advised to file a modification, which she did immediately.

208.     However, the modification request, along with 13 other motions, remains unheard and ignored by CCCSD.

209.     Despite KAC's daily inquiries, requesting a warrant or any means to appear in court, social workers and CCCSD agents confirmed that ADOSO and SPDVR deliberately blocked the case from being docketed to conceal their misconduct.

210.     DLA further obstructed justice by refusing to acknowledge UCCJEA conferences, contempt motions, change-of-judge motions, notices of hearings, and motions to show cause.

211.     DLA falsely claimed in court documents that KAC owned a home and vehicle to revoke her IFP status.

212.     Additionally, DLA failed to enter these motions into CaseNet, filing only his unlawful rulings instead.

213.     MRR and then-Chief Judge Ryan Horsman of Daviess County also ignored these motions, despite receiving them via certified mail.

214.     Clerks from CCCSD, Adkins' assistant Sandy Dustman, and other Daviess County clerks directed KAC to contact ADOSO and SPDVR for a court date, further obstructing her ability to obtain relief.

215.     KAC informed the court that she had not been given a hearing and expressed concerns that Adkins was installed to perpetuate the fraudulent scheme. She recorded this exchange on her cellphone.

216.     ADOSO and SPDVR filed false charges against KAC in retaliation for her request for a court date.

217.     They also enlisted Detective Rachel Shae Holiman (RSH) to contact KAC by phone.

218.     KAC recorded this conversation, during which RSH not only threatened her with the full force of the Clay County Sheriff's Department (CCSD) but also relayed that ADOSO had ordered

KAC to file all custody-related paperwork in Daviess County, MO, and informed her that she was no longer allowed in Liberty, MO.

219.    KAC informed RSH that ADOSO did not have the authority to make such a demand, as she had been disqualified from the case.

220.    KAC further explained that it was impossible to file paperwork in a county where the case was not being heard and asserted that ADOSO was lying to retaliate against her.

221.    KAC had previously exposed that ADOSO was aware of child abuse allegations in the Brian Aalbers case (4:23-MJ-00139-BCW) long before they became public.

222.    Additionally, KAC refused to ignore video evidence showing SEGS placing her daughter in the presence of a registered sex offender.

223.    Upon information and belief, ADOSO and her co-conspirators manipulated the 8th Circuit Court of Appeals and two other courts into dismissing KAC's motions without cause or justification.

224.    KAC advised RSH that if a warrant was issued for her arrest, she wished to be notified so she could turn herself in—not out of guilt, but in desperation for a court date.

225.    KAC hoped that an arrest would force the court to acknowledge why she had been persistently seeking a hearing but was denied.

226.    Upon information and belief, and out of retaliation for making these facts known - ADOSO and SPDVR filed false charges in an attempt to keep KAC silent and partnered with Johnson County Kansas Sheriff's Department, Johnson County Kansas District Attorney's Office and other unarmed parties to arrest KAC, create more false charges, collect KAC's documents and electronic devices that hold video, email and other evidence confirming their criminal acts, and to further victimize and endanger Plaintiff's physical and mental health

227.    On May 10, 2024. KAC subsequently filed a restraining order and police report (Case# 24CV2414) against ADOSO and SPDVR in Johnson County, KS, and reported their false allegations and threats to law enforcement.

228.    KAC filed a Writ of Prohibition/Mandamus in the WDCOA (Case#WD87190) requesting relief from the violent threats and to order DLA to rule on motions, inter alia.

229.    KAC also informed the court that ADOSO and SPDVR, along with their co-conspirators, were fabricating false charges, were contacting former clients, and attempting to have these clients to call and lure KAC to an unknown location to cause her bodily harm.

230.    Despite this, RSH filed a false affidavit, supplementing the previous falsehoods from CCCC, which ultimately resulted in an arrest warrant for KAC months after their initial encounter.

231.    KAC recorded her conversation with RSH and informed her of the recording.

232.    This recording is in the possession of Johnson County Kansas District Attorney's office, who refuse to return it or allow KAC to use the evidence in her case.

233.    Johnson County Kansas Doistrict Attorney's office also has video evidence of an attack on KAC but refuse to return the evidence to KAC to use in her defense and refuse to file criminal charges against the assailant.

234.    ADOSO and SPDVR proceeded with the false charges, leading to KAC's arrest.

235.    They not only fabricated information in the affidavit but also misrepresented prior motions KAC had filed.

236.    ADOSO and SPDVR stated in their affidavit that KAC's appeals were denied instead of accurately stating that WDCOA cannot act on Plaintiff's appeal because they do not have jurisdiction over cases until a final judgement had been issued.

237.    A final judgement cannot be issued until all motions and issues are resolved.

238.    As long as ADOSO and SPDVR conspire to hold Plaintiff's hostage in CCCC to conceal their criminal behavior, there will be no resolution to Plaintiff's case.

239.    ADOSO and SPDVR wrote in this false affidavit that they were "afraid" that KAC would go to SG's school to regain custody they illegally took just to further manipulate what is seen in public records such as CaseNet and to tamper with KAC's custody case.

240.    KAC has filed multiple motions in various courts regarding the usurpation of jurisdiction and other misconduct committed by these individuals.

241.    However, her motions have been repeatedly denied—not on legal grounds, but because the case continues to be buried in CCCC with unresolved motions.

242.     This procedural stagnation prevents any appellate review, as no final judgment has been issued.

243.     One of their co-conspirators attempted to dismiss KAC's complaint after it was transferred to Missouri, but it was later refiled and is proceeding following his recusal.

244.     This same co-conspirator was the only judge to label KAC's complaint as "vexatious," despite its prior survival of the court's screening process. *It is important to note that this judge is the judge presiding over Dr. Brian Alber's federal case.

245.     He then issued an opinion supporting his false claims, disregarding the actual motion before him.

246.     His ruling falsely asserted that judges have absolute immunity—contradicting legal precedent and even his own previous rulings, which KAC plans to present during discovery.

247.     KAC challenged Judge Brian Wimes' ruling was purposely nongermane to the Plaintiff's filing and purposely lacked an opinion with current case law and federal statutes pleaded by Plaintiffs.

248.     Brian Wimes has yet to respond.

249.     KAC previously warned the court that this biased judge would dismiss her complaint. His dismissal came on the exact day she was arrested on false charges—after months of her seeking proper service of process.

250.     CCCC added these false charges to CaseNet on the day of KAC's arrest, further solidifying the coordinated effort to silence her.

251.     ADOSO and SPDVR went so far as to claim in their complaint that they feared KAC would attempt to regain custody of her child.

252.     They also alleged that they feared for their safety and installed additional security cameras at their home.

253.     However, these claims are contradicted by the fact that their personal information is publicly available online.

254.     These individuals have ignored multiple restraining orders, conspired with law enforcement to harm KAC physically, and manufactured false documents with TJF, which were

then used to mislead other officials, courts, and the Kansas City Police Department—placing KAC's life in danger.

255.    KAC fears she may never see her daughter again and that more children will continue to suffer due to the malicious, unethical, and unlawful actions of ADOSO and SPDVR.

256.    KAC finds it appalling that ADOSO and SPDVR have time to not only file false police reports, file false charges, and weaponize the court system and law enforcement against her – but does not have time to rule on motions that are almost 3 years old.

257.    It is even more appalling that the judicial system has allowed them to do so, remain unchecked, and refuse to intervene.

258.    The only intervention must be to silence and abuse KAC.

259.    Blake Sherer Carmichael, the Platte County prosecutor assigned to the case filed by ADOSO and SPDVR stated that he is going to wait until Johnson County Kansas courts convict and imprison KAC before he moves forward with the motion to dismiss the indictment and to recall the warrant and change venue.

260.    Upon information and belief, this is further evidence of the bias, collaboration between these government agencies against Plaintiff's, and a blatant abuse of power.

261.    The psychological distress from these ongoing threats and stalking led KAC to suffer a heart attack, resulting in hospitalization for over two weeks.

262.    This was a direct consequence of the intimidation tactics employed by CCCC and its affiliates

263.    One of their enforcers followed KAC to a court hearing in this district and, when questioned, refused to identify himself to Judge Berger or the U.S. Marshals.

264.    Due to this threat, KAC had to be escorted to her vehicle by federal marshals for her safety.

265.    In their fabricated affidavit, ADOSO and SPDVR falsely claimed that KAC had numerous avenues to contest their illegal rulings.

266.    However, KAC's complaints were obstructed and ignored at every turn.

267.     KAC filed formal complaints with the Office of Chief Disciplinary Counsel (OCDC), but they were blocked by Laura Elsbury to cover up the misconduct.

268.     Elsbury falsely claimed that jurisdictional usurpation was merely a "trial strategy" and that the OCDC does not handle complaints against GALs or family court commissioners.

269.     KAC refiled her complaint and confronted Elsbury, who had also identified herself as MRR's attorney, regarding video evidence of SG being exposed to a known sex offender.

270.     KAC also documented her filings through certified mail to MRR, disputing Elsbury's false statements.

271.     Additionally, Missouri Supreme Court clerks confirmed—on a recorded call—that Elsbury was lying about key details.

272.     Due to repeated obfuscation, KAC was provided with a separate fax line and alternative email to the Commission on Retirement, Removal, and Discipline of Judges. This was necessary because her complaints against ADOSO repeatedly "disappeared" from official records.

273.     KAC has documented email exchanges proving that this office deliberately concealed her complaints against ADOSO and DJA. She refiled the complaints on February 20, 2025, and March 4, 2025, as these individuals continue their unlawful actions.

274.     KAC also reported these crimes to Governor Mike Kehoe (then-Lieutenant Governor), his staff, the Missouri Judiciary Committee, the committee that interviews and refers judicial candidates to the governor, and multiple Missouri legislators.

275.     Despite their fiduciary duty under state law, no action has been taken to address the misconduct at CCCC.

276.     KAC has email records and social media evidence verifying these encounters.

277.     While KAC did not file a Writ of Quo Warranto in the Missouri Supreme Court, she did file one in CCCC.

278.     Contrary to ADOSO and SPDVR's false claims, it was not dismissed—it was ignored.

279.     To this day, it remains unaddressed by Prosecuting Attorney Zach Thompson.

280.     Upon information and belief, PA Thompson is complicit in this conspiracy with his colleagues at CCCC.

281.     Not only has he refused to file KAC's complaint, but he has also deliberately avoided pursuing child support charges against her, further blocking her access to the court system.

282.     Plaintiffs contacted the Clay County Board of Commissions and the city attorney for action and later served a letter of intention to sue.

283.     None of the state of Missouri or Clay County agencies have responded.

284.     KAC files this action and requests permission to amend complaint as needed.

285.     Federal, Kansas, and Missouri law all recognize that a void judgment is legally unenforceable and must be set aside once challenged.


## COUNT I
### VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1- 285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' right to petition the government and associational rights guaranteed by the First Amendment.


## COUNT II
### VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.

Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' right to due process and associational rights guaranteed by the Fourth Amendment.

## COUNT III
## VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' right to confront accusers, obtain witnesses, retain counsel and associational rights guaranteed by the Sixth Amendment.

## COUNT IV
## VIOLATION OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.

Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' right to petition the government and associational rights guaranteed by the Fifth Amendment.

## COUNT V
## VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights against cruel and unusual punishment and associational rights guaranteed by the Eighth Amendment.

## COUNT VI
## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES
## CONSTITUTION
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.

Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights under due process clause and equal protection clause and associational rights guaranteed by the Fourteenth Amendment.

## COUNT VII
## MISSOURI CONSTITUTION, ART. I, § 2
## (SUBMISSION)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law. Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights under Article I, § 2 of the Missouri Constitution.

## COUNT VIII
## MISSOURI CONSTITUTION, ART. I, § 10
## (DUE PROCESS)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiff incorporates all prior paragraphs. First, the liberty protected by the Due Process Clause of the Fourteenth Amendment includes the concept of personal bodily integrity and the right to be free of unauthorized and unlawful physical abuse by state intrusion.

Second, CCCC, KCMOPD, KCKPD, MDCPS, NKCSD, CMH, MRR, and DLA have caused four occurrences of physical or bodily abuse of the Plaintiff's that involved physical force, mental coercion, and emotional damage starting with forced proceedings in a child custody case in which they

did not have jurisdiction, continued detention of minor child in Clay County and forced housing with a violent predator and registered sex offender,  personal seizure of the children from their mother and blocking access to the court and all communication with children, false arrest and filing of false charges leading to further physical and mental abuse, manipulation of Case Net by deleting motions and refusing to file motions to keep the public unaware of their scheme and to cast Plaintiff's in a negative light, refusing to serve and enforce protective orders leading to further abuse and assault, and playing abusive manipulative games with Plaintiff's by assigning judges to continue their scheme while being led by the judge who introduced the UCCJEA to the statehouse when he was Representative Timothy Jon Flook in the Missouri House of Representatives. All of these things were done and orders issued in the clear absence of jurisdiction.

Third, the physical or bodily abuse was so demeaning and harmful under all the circumstances as to shock one's conscience.

Fourth, as a direct result, the children were damaged and mother suffered two heart attacks. Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights of life, liberty, property, and due process of law under Article I, § 10 of the Missouri Constitution.

## COUNT IX
### MISSOURI CONSTITUTION, ART. I, § 12
### (HABEAS CORPUS)
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in paragraphs 1-285, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights that the right to habeas corpus shall never be suspended under Article I, § 12 of the Missouri Constitution.

In Cook, the Missouri Supreme Court and Eighth Circuit reversed a judgement and granted habeas corpus for return of minor child when trial court lacked subject-matter jurisdiction making judgement void and mother was not properly served with summons. Ballenger v. Ballenger 444 S.W.3d 914 (W.D. Mo. 2014). In November of 2022, the Eighth Circuit held that habeas corpus was the only remedy available to a father whose rights were violated when his child was kidnapped and held on an Indian Reservation in violation of ICRA.  ("The only relief available under the ICRA is a writ of habeas corpus."), aff'd, No. 21-3735, 2022 WL 16631180 (8th Cir. Nov. 2, 2022)

## COUNT X
### MISSOURI CONSTITUTION ART. I, § 14
### (OPEN COURTS)
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay under Article I, § 14 of the Missouri Constitution.

**COUNT XI**
**MISSOURI CONSTITUTION ART. V, § 6**
**(ASSIGNMENT OF JUDGES)**
**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.  Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights. The supreme court may make temporary transfers of judicial personnel from one court or district to another as the administration of justice requires and may establish rules with respect thereto. Any judge shall be eligible to sit temporarily on any court upon assignment by the supreme court or pursuant to supreme court rule under Article V, § 6 of the Missouri Constitution.

**COUNT XII**
**MISSOURI JUDICIAL CODE OF CONDUCT RULE 2-2.11, 2.12, 2.14, 2-3.7, 23.11, 2-4.2**
**(Recusal-Bias-Conflict of interest-Supervisory Duties, Knowledge & Concealment of Misconduct)**
**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.

Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights to an independent, fair, and impartial judiciary under Canon (2) a judge shall

perform the duties of judicial office impartially, competently, and diligently. Defendants' above-described policies, practices, conduct, and tortious acts have violated and continue to violate Plaintiffs' rights by disregarding and abusing their duties under the cannons listed in the Missouri Judicial Code of Conduct Rules 2-2.11, 2.12, 2.14, 2-3.7, 2-3.11, 2-4.2.

### COUNT XIII
### CLAY COUNTY MISSOURI FAMILY COURT LOCAL RULE 6
### (ASSIGNMENT OF JUDGES-TRANSFER OF CASES)
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Clay County MO Family Court Local Rule 6.1.7 imposes a mandatory duty that all post-judgment motions and applications in civil cases shall be heard by the Judge rendering the judgment. Clay County MO Family Court Local Rule 6.9.1 imposes a mandatory duty that in the absence of the Presiding Judge or in case of the Presiding Judge's inability to act or when it is necessary or expedient, the Presiding Judge may designate any Circuit Judge to act in the Judge's place. In the event the Presiding Judge is absent or unavailable and has failed to designate an acting Presiding Judge or if both the Presiding Judge and the designated Acting Presiding Judge are absent, then the Circuit Judge of the Division number next beyond that of the Division of the Presiding Judge and continuing in successive order as needed shall act as Presiding Judge. Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty. Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 6 sought to avoid, i.e., refusing to hear each post-trial motion filed by Plaintiff; refusing to designate a judge in the next and/successive district AND issuing an order for the Missouri Supreme Court to designate a judge without transmitting the order to the court for processing; - in violation of Local Rules 6.1.7 and 6.9.1.

## COUNT XIV
## CLAY COUNTY MISSOURI FAMILY COURT LOCAL RULE 11
## (RECORDING OF JUDICIAL PROCEEDINGS)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Clay County MO Family Court Local Rule 6.1.7 imposes a mandatory duty that Pursuant to Supreme Court Operating Rule 5.11, under the direction and supervision of the responsible Division Clerk, an interested party may listen to or request a copy of the audio recording of proceedings of trial that is maintained by the Circuit's IT department with FTR Gold except when a Defendant is charged with sexual assault, domestic assault, stalking, or forcible rape.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty. Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 11 sought to avoid, i.e., refusing to provide Plaintiff with audio from hearing for motion for new trial; court reporter telling Plaintiff via email that no audio was available, and she would not provide audio used to complete transcript.

## COUNT XV
## CLAY COUNTY MISSOURI FAMILY COURT LOCAL RULE 13
## (COMMUNICATIONS WITH THE COURT)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Clay County MO Family Court Local Rule 13.2.1 imposes a mandatory duty to ensure that any letter or communication relating directly or indirectly to any pending matter, addressed personally or unofficially to any Judge of the court, will be filed with that case, and will ordinarily be open to the inspection of the public and adverse parties. Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty. Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 13 sought to avoid, i.e., refusing to provide Plaintiff with communication between GAL and judge and/or attorneys; refusing to place all communications in the record and legal file for court of appeals in violation of Local Rule 13.2.1.

## COUNT XVI
## CLAY COUNTY MISSOURI FAMILY COURT LOCAL RULE 68
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Clay County MO Family Court Local Rule 68.7.3 imposes a mandatory duty to ensure that no dissolution of marriage, legal separation or paternity action involving minor children shall proceed to final hearing until there has been compliance with this order. Clay County MO Family Court Local Rule 68.7.4 imposes a mandatory duty to ensure that the class attendance shall also be required in connection with motions to modify involving visitation or custody issues that are in dispute and motions for family access. Clay County MO Family Court Local Rule 68.8.1 imposes a mandatory duty to in every dissolution of marriage, legal separation, or paternity action in which there are contested issues of custody and/or visitation, the parties (except for the State of Missouri) shall complete mediation, as provided in Supreme Court Rule 88.02-88.08 and this rule, prior to the filing of a motion for trial setting. Any motion for trial

setting shall include an averment that mediation has been completed, or that there are no contested issues regarding custody or visitation of minor children, or that the case has been excluded or exempted from mandatory mediation as provided by this rule.

Clay County MO Family Court Local Rule 68.8.1 imposes a mandatory duty to ensure that in compliance with Section 452.312 RSMO, every petition for dissolution of marriage or legal separation, and every petition for support of a minor child, shall comply with the statute. Clay Co. MO Family Court Local 68.1.7 imposes a mandatory duty to ensure that in all dissolution cases, motions to modify and paternity cases in which there are minor children, the parties shall file a Form 14. These forms shall be furnished by the Circuit Clerk and submitted by the parties at least five days prior to the hearing.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty.

Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 68 sought to avoid, i.e., scheduling and proceeding with trial despite Plaintiff not being aware of or completing Parent Education Program because it was attached to summons that she was NOT properly served; motion for trial setting was filed and date was set despite mediation not being completed, in violation of Local Rules 68.1.1, 68.1.7, 68.1.10, and 68.8.1.


**COUNT XVII**
**CLAY COUNTY MISSOURI FAMILY COURT LOCAL RULE 108**
**(ALL DEFENDANTS)**


Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Clay Co. MO Family Court Local 108.2.5 imposes a mandatory duty to ensure that in order to properly maintain records, a court professional shall not inappropriately destroy, alter, falsify, mutilate,

backdate, or fail to make required entries on any records within the court's control. Clay Co. MO Family Court Local 108.2.7 imposes a mandatory duty to ensure discretion, a court professional shall be respectful of litigants, attorneys, the public, applicants, and employees' personal lives; disregard information that legally cannot or should not otherwise be considered; use good judgment in weighing the credibility of Internet data; and be cautious about verifying identities. A court professional shall treat personal or sensitive information with the same discretion that one would wish others to have if one were involved in a similar case. Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty.

Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 108 sought to avoid, i.e. court clerk refused to file Plaintiff's motions; court clerk discarded Plaintiff's motions after refusing to file; court clerk filed motions from Plaintiff with incorrect dates, court clerk altered dates in CaseNet after filing motions, even though they too are incorrect; court reporter falsified transcripts with testimony from individuals and attorneys who were not there, listed individuals who were not there and left out statements and presence of individuals and attorneys who were there;  GAL testified to and presented information from over 10 years ago concerning Plaintiff was a child support order against Plaintiff without evidence or knowledge of finances, previous child support order changed by oral motion of GAL the day of trail and moments before reading of judgment in violation of Local Rues 108.2.5 and 108.2.7.

**COUNT XVIII**
**MISSOURI SUPREME COURT RULE 4-5.5**
**(UNAUTHORIZED PRACTICE OF LAW)**
**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Missouri Supreme Court Rule 4 imposes a mandatory duty to ensure that a lawyer shall not practice law in a jurisdiction where he is not licensed pursuant to the provisions of the statute or as provided by these Rules.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty.

Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Missouri Supreme Court Rule 4 sought to avoid, i.e. practicing law in a case outside of jurisdiction; accepting guardian ad litem duties outside of jurisdiction and providing any other legal services outside of jurisdiction in violation of Missouri Supreme Court Rule 4-5.5(a)(b)(c)(d).

### COUNT XIX
**MISSOURI SUPREME COURT RULE 51.04, 51.05, 51.09, 51.10, 51.12, 51.15**
**(CHANGE OF VENUE, CHANGE OF JUDGE)**
**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Missouri Supreme Court Rule 51 imposes a mandatory duty to ensure that anywhere a statute contains provisions for a method of service, service may be made pursuant to the provisions of the statute or as provided by these Rules.  Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty. Defendants'

failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 51 sought to avoid, i.e., refusing to respond to motion for change of judge; refusing to respond to motion for change of venue; and refusing to assign judge in another circuit in violation of Missouri Supreme Court Rules 51.04, 51.05, 51.09, 51.10, 51.12, and 51.15.

## COUNT XX
## MISSOURI SUPREME COURT RULE 54.14, 54.18, 54.20
## (SERVICE)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Missouri Supreme Court Rule 54 imposes a mandatory duty to ensure that courts adhere to rules governing civil procedure regarding the proper service of summons, motions, and pleadings pursuant to the provisions of the statute or as provided by these Rules.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty.

Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 54 sought to avoid, i.e., refusal to address motion to dismiss due to insufficient service; refusal to address motion to quash due to insufficient service; refusal to address video of process server leaving summons on the ground; refusal to address motion to dismiss filed by Attorney Breon prior to trial; refusal to address insufficient service at hearing for motion for new trial in violation of Missouri Supreme Court Rules 54.14, 54.18, and 54.20.

## COUNT XXI

81

## MISSOURI SUPREME COURT RULE 129.04 APP. C
## (GUARDIAN AD LITEM STANDARDS)
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Missouri Supreme Court Rule 129.04 App. C Standard 1.0 imposes a mandatory duty that the guardian ad litem shall serve until the matter is concluded or as otherwise ordered by the court and lawyers appointed to act as guardian ad litem shall act in accordance with the rules of professional conduct.

Missouri Supreme Court Rule 129.04 App. C Standard 2.0 imposes a mandatory duty that in making guardian ad litem appointments, each court will be familiar with its jurisdiction, being mindful of the amount of time that is necessary to perform the guardian ad litem's duties under these standards.

Missouri Supreme Court Rule 129.04 App. C Standard 3.0 imposes a mandatory duty that the guardian ad litem shall be guided by the best interests of the child and shall exercise independent judgment on behalf of the child in all matters.

Missouri Supreme Court Rule 129.04 App. C Standard 4.0 imposes a mandatory duty that the guardian ad litem shall provide not only factual information to the court but also shall diligently advocate a position in the best interests of the child. The guardian ad litem shall be prepared to participate fully in any proceedings and not merely defer to the other parties. The guardian ad litem may examine, cross-examine, subpoena witnesses, and offer testimony. The guardian ad litem when appropriate to represent the best interests of the child shall file petitions, motions, parenting plans, responses, or objections. The court shall assure the guardian ad litem maintains independent representation of the best interests of the child. The court shall require the guardian ad litem to perform the guardian ad litem duties faithfully and, upon failure to do so, shall discharge the guardian ad litem and appoint another.

Missouri Supreme Court Rule 129.04 App. C Standard 5.0 imposes a mandatory duty that to ensure proper access, the guardian ad litem has the obligation to ascertain the location of the child, to initiate communication with the child, and to provide the child with contact information for the guardian ad litem promptly.

Missouri Supreme Court Rule 129.04 App. C Standard 6.0 imposes a mandatory duty that the guardian ad litem is entitled to all reports relevant to the case and shall have access to all relevant records relating to the child, the placement of the child, or the child's family members.

Missouri Supreme Court Rule 129.04 App. C Standard 7.0 imposes a mandatory duty that guardian ad litem shall comply with all statutes, rules, and regulations relating to the receipt of confidential or privileged information received as guardian ad litem.

Missouri Supreme Court Rule 129.04 App. C Standard 8.0 imposes a mandatory duty that the guardian ad litem shall review the progress of a child's case through the court process and advocate for timely hearings, provision of necessary services, and compliance with court orders.

Missouri Supreme Court Rule 129.04 App. C Standard 9.0 imposes a mandatory duty that the guardian ad litem shall explain, when appropriate, the court process and the role of the guardian ad litem to the child. The guardian ad litem shall ensure that the child is informed of the purpose of each court proceeding.

Missouri Supreme Court Rule 129.04 App. C Standard 10 imposes a mandatory duty that the guardian ad litem shall participate, when appropriate, in the development and negotiation of any service plans, parenting plans, proposed orders, and staffing's that affect the best interests of the child as they relate to the case at hand. The guardian ad litem shall monitor implementation of service plans and court orders while the case is pending to determine whether services ordered by the court are being provided in a timely manner.

Missouri Supreme Court Rule 129.04 App. C Standard 11 imposes a mandatory duty that the guardian ad litem shall appear at all court proceedings in which the guardian ad litem is appointed. The guardian ad litem shall not waive the presence of the child at court proceedings without good cause. The guardian ad litem shall participate actively and fully in all court proceedings. The guardian ad litem shall present evidence, file pleadings, and call witnesses when appropriate to ensure all information relevant to the child's best interests is presented to the court for consideration.

Missouri Supreme Court Rule 129.04 App. C Standard 12 imposes a mandatory duty that the guardian ad litem is appointed, the guardian ad litem shall be present during any conferences between the counsel for a party and the child. The guardian ad litem should be notified of all proceedings or meetings involving the child.

Missouri Supreme Court Rule 129.04 App. C Standard 13 imposes a mandatory duty that the guardian ad litem shall present a recommendation to the court when authorized by law or requested by the court based on the evidence presented and consistent with the best interests of the child. During the proceedings, the guardian ad litem must inform the court of the child's wishes and preferences even though different from the guardian ad litem's recommendation.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty. Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Missouri Supreme Court Rule 129.04 App. C sought to avoid, i.e., Plaintiff's acting and practicing law outside of their jurisdiction and where they do not have subject-matter jurisdiction as Plaintiff's are legal residents of the state of Kansas; placing child back in abusive environment and alienating child from rightful custodial parent; GAL refusing to contact collateral contacts, relatives, doctors, teachers, or religious and volunteer connections for Plaintiff; GAL won't offer false testimony from google searches in an attempt to conceal the fact that he did not do any of the prior;

Defendant's would hear motions to disqualify GAL when concerns regarding his performance are brought to the court; GAL making recommendations in complete opposite of the best interest of the child because he did not  conduct interviews nor ascertain the wishes of anyone involved; ineffective assistance of counsel;  not communicating the wishes of the child to the court because   Defendant's, especially GAL have never spoken to Plaintiffs – in violation of 13 of the 14-GAL Standards set by the Missouri Supreme Court because Defendant NEVER met with or spoke to Plaintiff at any prior to trial or after trial.

## COUNT XXII
### REVISED STATUTES OF MISSOURI TITLE XXX CHAPTER 452
### (CHILD SUPPORT, MODIFICATION, UCCJEA)
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Revised Statutes of Missouri Title 30 Chapter 452 imposes a mandatory duty to ensure that courts follow rules and applicable laws set by the Missouri Supreme Court governing child custody and child support proceedings pursuant to the provisions of the statute or as provided by these Rules 452.300 to 452.415.

Defendants, by the above-described policies, practices, conduct, and tortious acts, did not exercise reasonable diligence and thereby failed to discharge that duty.

Defendants' failure proximately caused the particular kind of injury to Plaintiffs that Local Rule 51 sought to avoid, i.e. Guardian ad Litem making oral motions in court to modify child and Commissioner's agreeing to do so as in this case with REJG and SPDVR; Attorneys and process servers will not submit false affidavits stating service was complete; parties are properly served by leaving a copy of summons with a person over the age of 18 and not on the ground as in this case with Deborah Martin;

Plaintiff's due process rights violated; Plaintiff subjected to a trial by ambush; courts will not illegally declare themselves as the home state nor make rulings outside jurisdiction; courts will follow UCCJEA guidelines and those written herein to contact the home state and state which does have jurisdiction and follow proper procedure; Courts will follow rules and know that a state has to decline jurisdiction instead of the Court usurping jurisdiction by refusing to follow guidelines; Courts will know that they have a duty to relinquish custody of the child to the parent and home state when home state accepts jurisdiction just as Kansas did in December 2022 and again in September 2023; courts will know that temporary orders are not final until the home state and state with jurisdiction has been contacted and the matter of jurisdiction resolved; guardian ad litem will be aware of his duties and that he has a duty to actually perform them; courts will know that it is illegal to kidnap a person's child; a hearing is supposed to be held after a temporary custody hearing to determine permanency, each party is to submit parenting plans; complete form 14 before child support is ordered or calculated (which was not done in my case); courts will ensure that parties adhere to orders set out, even in an order made without court having jurisdiction, that would not have a mother be separated from her child for almost three (3) years and given to the man who abused them – in violation of Revised Statutes of Missouri Title XXX Chapter 452.375, 452.376, 452.380, 452.395, 452.400, 452.410, 452.423, 452.425, 452.430 and 452.700 thru 452.900.

As a direct and proximate result of Defendants' actions, Plaintiffs have suffered actual harm.


### COUNT XXIII
### DECLARATORY RELIEF UNDER 18 U.S.C. §§ 241, 242
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law. There exists an actual, present, and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct. described herein.

Plaintiffs contend that Defendants violated Plaintiffs' rights under the constitutions and laws of the United States, the state of Kansas, and the state of Missouri.

On information and belief, Defendants deny that their conduct violated Plaintiffs' rights under the constitutions and laws of the United States, the state of Kansas, and the state of Missouri.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States and the state of Missouri.

## COUNT XXIV
### DECLARATORY RELIEF UNDER 28 U.S.C. §§ 455, 1257, 1738, 2201, 2202
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.  The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Plaintiffs reallege serious mental, physical and emotional injury because the defendants acted with "deliberate indifference to the Constitution" or the law.

There exists an actual, present, and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct described herein.

Plaintiffs contend that Defendants violated Plaintiffs' rights under the constitutions and laws of the United States and the state of Missouri.

On information and belief, Defendants deny that their conduct violated Plaintiffs' rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States and the State of Missouri.

## COUNT XXV
### DECLARATORY RELIEF UNDER 42 U.S.C. §§ 1985, 1986
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth.

There exists an actual, present, and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct described herein.

Plaintiffs contend that Defendants violated Plaintiffs' rights under the laws of the U.S. Constitution, the state of Kansas and laws of the state of Missouri.

On information and belief, Defendants deny that their conduct violated Plaintiffs' rights under the constitutions and laws of the United States, the state of Kansas, and the state of Missouri.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXVI
### Retaliation for Exercise of First Amendment Rights
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully

set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein

First, Defendant's ADOSO and SPDVR filed false charges against Plaintiff for exercising her 1st

amendment rights to free speech and using a statement made concerning a press conference as a threat.

Second, Plaintiff's engaged in a protected First Amendment activity in holding a press conference,

collaborating with parents in the community who re enduring similar circumstances and giving them a

platform to express their concerns, and by stating "they had done nothing wrong," "would see you in court

and ...).

Third, these adverse actions against the Plaintiff's would chill a person of ordinary firmness from

continuing in their speech, and display of constitutionally protected rights.


Fourth, ADOSO and SPDVR acts were motivated at least in part by the Plaintiff's exercise of a

First Amendment protected activity, and

Fifth, as a direct result, the plaintiffs were damaged.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional

actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under

the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.


### COUNT XXVII
### ADOSO, SPDVR, Detective RSH Filed a False Affidavit and Violated My Fourth Amendment Rights and They Are Not Entitled to Qualified Immunity Under §1983 For My False Arrest/Imprisonment
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully

set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. Yowell v Combs, 89 F.3d 542, 544 (8th Cir. 1996), citing Harlow v Fitzgerald, 457 U.S. 800, 818 (1982). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Johnson-El v Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989), quoting Anderson v Creighton, 483 U.S. 635, 640 (1987).

A constitutional right is clearly established when it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier v Katz, 533 U.S. 194, 202 (2001).

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.


## COUNT XXVIII
## Failure to Intervene in Violation of 42 U.S.C. § 1983
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein

Plaintiff is authorized to bring this civil claim against these Defendants pursuant to the civil remedies provision of 42 U.S.C. § 1983. 355. By their conduct and under color of state law, these Defendants, acting within the scope of their employment, had opportunities to intervene on behalf of Plaintiff's to prevent Defendants from committing perjury by filing false charges and inserting false information into other cases, provoking fear in KAC fear for the safety and security of her person,

children and her family unit, and deprivation of liberty without due process of law, but with deliberate indifference, declined to do so.

These Defendants' failures to intervene violated Plaintiff's clearly established constitutional right not to be deprived of liberty without due process of law as guaranteed by the First, Fourth, Thirteenth, and Fourteenth Amendments. No reasonable Chief of Police, Sheriff, Supervisor or law enforcement officer at the times relevant to this Complaint would have broken clear established laws and policies – especially those written and in public view on their website – unless it was not for the intervention of authorities such as circuit court judges and supreme court justices.

These Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Plaintiff's injuries.

These Defendants knew, or were deliberately indifferent, that their conduct would result in Plaintiff's being harmed physically, mentally, and emotionally.

These Defendants' failure to intervene and prevent the actions of CCCC were motivated by an evil motive or intent or involved reckless or callous indifference to Plaintiff's federally protected rights.

These Defendants' conduct demands deterrence and punishment beyond that offered by Section 1983's compensatory damages.

Given the nature of these Defendants' failure to intervene in CCCC's conduct – including suborning perjury, threatening to take away Plaintiff's freedom and ability to see children, and sexual and physical assault – the wisdom of pecuniary punishment is justified and deterring future failure to intervene in such conduct by police officers, prosecuting attorneys, and every other official involved is highly advisable.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXIX
### Civil Rights Conspiracy in Violation of 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

These Defendants and other unnamed employees of the Unified Government, CCCC and other entities, acting within the scope of their employment and under color of state law, agreed among themselves and with others to act in concert in order to deprive Plaintiffs of their clearly established First, Fourth, Thirteenth, and Fourteenth Amendment rights.

In furtherance of the conspiracy, these Defendants and other unnamed employees of the Unified Government, CCCC, and other entities engaged in and facilitated numerous overt acts, as described in greater detail above.

As a direct and proximate result of the actions of these Defendants and other unnamed employees of the Unified Government, CCCC, and other entities Plaintiff was forced to protect herself under threat that she would be physically harmed, falsely imprisoned, her children would be unlawfully taken away, KAC was sexually and physically assaulted, and she suffered the other grievous damages and injuries as set forth above.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXX
### Supervisory Liability in Violation of 42 U.S.C. § 1983
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

ADOSO, SPDVR, MRR, TJF, JHH, AB, MP, GOV. PARSONS, Sheriff Aiken, and TL acted with impunity in an environment in which they were all supervisors of one or more of the defendants, (i) exercised control or direction; (ii) failed to supervise; (iii) knew of the violation and acquiesced in its continuance; and (iv) promulgated, created, implemented, or utilized a policy that caused the deprivation of Plaintiff's constitutional rights, all as explained in greater detail above.

These Defendants' actions were with recklessness and/or deliberate indifference to Plaintiff's constitutional rights, as explained in greater detail above.

Had these Defendants exercised proper control, direction, or supervision; prevented their continued conduct once aware of their violations; and not promulgated, created, implemented, or utilized a policy that caused deprivation of Plaintiff's constitutional rights, these supervisors would not have participated in the harmful acts that continue to threaten the safety of each Plaintiff.

These Defendants specifically supervised the specific acts taken by themselves and/or their subordinates, and these Defendants knew of their co-conspirator's conduct toward and treatment of

Plaintiffs (and other Black women) and either facilitated, approved, condoned, or turned a blind eye toward it.

These Defendants' reckless and/or deliberately indifferent conduct, all under color of state law, violated their duty, which had been clearly established by 1994, to supervise their subordinates, and no reasonable attorney, sheriff captain, etc. would have believed that their conduct and actions (or lack thereof) in the face of actual or constructive notice of misconduct by subordinate a deputy sheriff that spends his days serving papers was lawful.

As a direct and proximate result of these Defendants' actions (and failure to act), Plaintiff was threatened, sexually assaulted, physically and emotionally harmed, and suffered the other grievous damages and injuries set forth above.

These Defendants' supervision of their subordinate's conduct toward and treatment of Plaintiff's (as set forth above) was motivated by an evil motive or intent or involved reckless or callous indifference to Plaintiff's federally protected rights.

These Defendants' supervision of subordinate's conduct demands deterrence and punishment beyond that offered by Section 1983's compensatory damages.

Given the nature of these Defendants' supervision, the wisdom of pecuniary punishment is justified and deterring future behavior by those holding such an office.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXXI
**Monell Claim for Unconstitutional Customs, Polices, and Practices in Violation of 42 U.S.C. § 1983
(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

The Unified Government was, at all times relevant to this Complaint, responsible for KCKPD. The Unified Government is the successor entity to KCK which employed all of the other Defendants at all times relevant to this Complaint.

The Clay County Missouri Sheriff's Department (CCSD), Clay County Board of Commissioners, Unified Government and KCMO Board of Police Commissioners, by and through its final policymakers, have in force and effect, a policy, practice, or custom of unconstitutional misconduct, including, in particular, informal policies, procedures, and customs that created a widespread practice of police abusing their government authority (including kidnapping, coercing, pressuring, sexually assaulting, and raping Black women; improper investigative practices to obtain wrongful convictions and support the government-sanctioned Protection Racket; and discouraging, preventing, and failing to investigate complaints of misconduct).

These entities, by and through its final policymakers, had in force and effect, a policy, practice, or custom of failing to adequately supervise, discipline, and train its police officer, sheriff deputies, and detectives.

These entities, by and through its final policymakers, had in force and effect, a policy, practice, or custom of encouraging further abuse, including ratification of unconstitutional conduct and fostering a culture of abuse.

These entities, by and through its final policymakers, had actual or constructive notice of, but repeatedly failed to make any meaningful investigation into, charges that its employees used the misconduct, as described in greater detail above.

These entities, by and through its final policymakers, had actual or constructive notice of, but repeatedly failed to make any meaningful investigation into, charges that widespread failures to supervise or discipline officers for misconduct enabled such employees to engage in misconduct without repercussion.

The continued adherence to these unconstitutional municipal customs, practices, and/or policies amounted to deliberate indifference to the constitutional rights of citizens like the Plaintiffs.

Despite repeated opportunities to do so and for years beforehand, these entities by and through its final policymakers, failed to adequately supervise, discipline, and train its employees to use proper and legal investigative tactics by not physically, psychologically, and sexually abusing female informants, coercing those informants to provide false evidences, illegally protecting individuals involved in the illegal drug trade, failing to turn over exculpatory evidence to criminal defendants, and wrongfully pursuing, prosecuting, or convicting innocent individuals to close cases.

The egregious acts of the defendants and other employees were deliberately ignored by these entities, despite multiple employees and final policymakers knowing about the misconduct but either encouraging or turning a blind eye to it.

These entities, by and through its final policymakers, knew that failing to act would be substantially certain to result in constitutional violations including, but not limited to, the sexual assault and threats against KAC and her being forced to protect herself so CCCC and Johnson County Kansas District Court (JCKDC) could wrongfully convict KAC of crimes in both Kansas and Missouri

Such unconstitutional municipal customs, practices, and/or policies were the moving force behind the sexual assault, physical assault, and threats against KAC and her being forced to protect herself, as well as all of the other grievous injuries and damages set forth above.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

**Count XXXII**
**Unreasonable Seizure**
**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

First, SPDVR directly and proximately caused the seizure of Plaintiff's KAC and SG a CCCC for a trial by ambush.

Second, the seizure was unreasonable because CCCC had a complete absence of jurisdiction to hold trial and issue any orders or judgements in Plaintiff's child custody case. Third, as a direct result, each Plaintiff was injured.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

**COUNT XXXIII**
**PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO INSTRUCT, SUPERVISE, CONTROL OR DISCIPLINE AGAINST DEFENDANTS' CITY OF LIBERTY, BOARD OF**

**COMMISSIONERS, CLAY COUNTY SHERIFF'S DEPARTMENT, AND CHIEF STACEY GRAVES, AND SHERIFF WILL AIKEN.**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Defendants have exclusive management and control of the policies and practices of the law enforcement agencies in their districts regarding the use of force, including the methods and manners of detaining and/or immobilizing individuals, and are responsible for ensuring that members of their respective organizations conduct themselves in a lawful manner in undertaking and performing their duties.

Said Defendants are vested with the authority to establish policies, practices, customs and usages of their organizations through training, supervision, discipline and otherwise controlling law enforcement officers.

Said defendants violated Plaintiff's rights by custom and practice of failing to train, instruct, supervise, control and discipline law enforcement officers in the use of serving and enforcing protection orders, including regarding orders issued from different states.

The violation of the Constitutional rights of individuals such as Plaintiff was a highly predictable consequence of Defendants' failure to equip its law enforcement officers with specific tools to handle such situations. Defendants' failure to have adequate safeguards for dealing with such situations constitutes deliberate indifference to the rights of citizens.

The failure to train, discipline or supervise Defendant officers JHH, RSH, JJT, and CCCC employees has resulted in the use of excessive lying and judicial abuse as a matter of custom in violation of clearly established law and was not objectively reasonable.

As a result of Defendants' failure to train, discipline, or supervise the officers of the department, Plaintiff was deprived of his rights to be free from excessive force, liberty, and unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

The defendants' law enforcement employees' actions deprived plaintiff of her 4th Amendment Rights due to the defendants' failure to provide adequate training and accountability to the employees involved in this complaint. This failure caused a violation o of Title 43.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

### COUNT XXXIV
### PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO INSTRUCT, SUPERVISE, CONTROL OR DISCIPLINE AGAINST DEFENDANTS CLAY COUNTY SHERIFF'S OFFICE AND SHERIFF WILL AKIN

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Defendants Clay County Sheriff's Office and Sheriff Will Akin, have exclusive management and control of the policies and practices of the Clay County Sheriff's Office and officers regarding the service of process, including the methods and manners of detaining and/or immobilizing individuals, and are responsible for ensuring that members of their respective organizations conduct themselves in a lawful manner in undertaking and performing their duties. Said Defendants are vested with the authority to establish policies, practices, customs, and usages of their organizations through training, supervision, discipline and otherwise controlling the officers of the CCSD.

Said defendants violated Plaintiff's rights by custom and practice of failing to train, instruct, supervise, control and discipline the police officers of the CCSD, including regarding the service of protection orders and rendering full faith and credit to those orders.

The violation of the Constitutional rights of individuals such as Plaintiff was a highly predictable consequence of Defendants' failure to equip its law enforcement officers with specific tools to handle such situations as orders issued from sister states and those involving children.

Defendants' failure to have adequate safeguards for dealing with such situations constitutes deliberate indifference to the rights of citizens such as KAC and her children.

The failure to train, discipline or supervise JHH, RSH, and others at CCSD has resulted in the use of excessive violations of written policies as a matter of custom in violation of clearly established law and was not objectively reasonable.

As a result of Defendants' failure to train, discipline, or supervise the officers of the department, Plaintiff was deprived of her rights to parent her children without unlawful interruption, be free from excessive force, free from false imprisonment, and unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

Wherefore, Plaintiff prays judgment against the CCSD and Sheriff Will Akin for all damages in this action recoverable under 42 U.S.C.§1983, including pecuniary and compensatory damages in an amount which is fair and reasonable for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

The U.S. Constitution, the state of Kansas, nor the state of Missouri allows government agencies to allow officers to engage in a pattern or practice of conduct that deprives persons of rights protected by

the Constitution or U.S. laws.); and pursuant to 18 U.S.C., section 1343 which provides redress for the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States.

The defendants' law enforcement employees' actions deprived plaintiff of her 4th Amendment Rights due to the defendants' failure to provide adequate training and accountability to the employees involved in this complaint. This failure caused a violation o of Title 43.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

### COUNT XXXV
### PLAINTIFF'S CAUSE OF ACTION FOR RETALIATION UNDER 42 U.S.C. §1983
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Acting in their official capacities, under color of state law and within the course and scope of their employment, Defendants ADOSO AND SPDVR attempted to silence Plaintiff by filing false charges, sabotaging visitation, blocking access to the courts, interfering in the prosecution od SEGS, and colluding with JCKDC to interfere with the judicial process and unlawfully arrest and imprison KAC.

The restraint, and assault of Plaintiff constituted retaliation by officers and is consequently a violation of his right to freedom of speech as protected under the First Amendment to the United States Constitution.

As a direct and proximate cause of Defendants' actions to silence Plaintiff she was arrested and endured severe physical and emotional abuse.

The severity and level of intrusion on Plaintiff's life and liberty rendered the investigatory search an arrest which was not based in factual and honest probable cause that Plaintiff had committed a crime under the laws of the State of Missouri of the State of Kansas.    As a direct result of Defendants unlawful actions against Plaintiff KAC, which were performed under color of state law, Plaintiff suffered grievous bodily harm, pain, suffering, fear and was deprived of her right to be free from the unreasonable seizure of his person and the use of excessive force in violation of his rights 16 under the Fourth and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. §1983.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXXVI

### Violation of the Equal Protection Clause

### (Article I, Section 2)

### (All Defendants)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Article I, Section 2 of the Missouri Constitution provides that "all persons are created equal and are entitled to equal rights and opportunity under the law."

The Equal Protection Clause of the Missouri Constitution thus protects individuals and groups from discrimination by the government.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXXVII
### Malicious Prosecution and Abuse of Power
### (ALL DEFENDANTS)

A pleading alleging abuse of process must set forth ultimate facts establishing (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted or authorized by the process; (2) the defendant had an illegal purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.  *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990).

 It must be shown that process has been used to accomplish an unlawful end or to compel the defendant to do something he could not be legally compelled to do.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXXVIII
### NEGLIGENCE
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

The four essential constituents of negligence are:

1. The existence of the legal duty of the defendant;
2. Failure or omission to perform the duty
3. Harm sustained by the plaintiff, and;
4. Failure to perform the duty or the negligent act of the defendant, which subsequently results in the cause of action in the suit.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XXXIX
## FRAUDULENT MISREPRESENTATION - FRAUDULENT MISREPRESENTATION
## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XL

## COMPLAINT FOR VIOLATIONS OF FEDERAL RIGHTS, RICO ACT, AND JURISDICTIONAL ABUSE

## (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

This is a civil action brought under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962), and other applicable laws for violations of Plaintiff's constitutional rights under the Fourteenth Amendment.

Defendants, including ADOSO AND SPDVR, knowingly usurped jurisdiction from the State of Kansas, lacked personal and subject-matter jurisdiction, and issued a fraudulent child support order against Plaintiff, causing severe financial and emotional distress.

The Defendants engaged in judicial misconduct, obstructed justice by blocking access to the courts, and conspired to manipulate the child support enforcement system to prevent Plaintiff from obtaining relief and seeing their child.

Plaintiff KAC and SG are and have always been residents of the State of Kansas, a parent subjected to an unlawful child support order, and a victim of judicial misconduct and fraud.

Defendant ADOSO is a judge who acted outside her judicial capacity by usurping jurisdiction and violating Plaintiff's due process rights.

Defendant SPDVR similarly acted beyond her authority as family court commissioner in enforcing a fraudulent child support order.

Defendant Guardian ad Litem REJG submitted false documentation, which was relied upon in issuing the fraudulent judgment.

Defendant Child Support Director of Clay County, Zach Thompson, and Missouri Family Support Division aided in the wrongful enforcement of an illegal child support order.

Defendants unlawfully assumed jurisdiction over Plaintiff's child support case, despite Kansas being the appropriate jurisdiction.

Defendants refused to hold a proper conference to clarify jurisdiction, failing to afford Plaintiff due process.

Defendants relied on false documentation provided by Guardian ad Litem REJG to justify a fraudulent child support order.

Defendants issued a fraudulent judgment, compelling Plaintiff to pay child support despite their lack of jurisdiction and standing.

Plaintiff, desperate to access the court and see their child, requested to be arrested for non-payment, believing that would be the only way to challenge the fraudulent order.

Defendants refused to arrest Plaintiff or allow modification of the order, blocking legal recourse.

Defendants manipulated the system by closing Plaintiff's child support case in Missouri and "referring" that it be transferred to Kansas, after Kansas had already suspended Plaintiff's license and garnished their taxes for non-payment of the fraudulent order.

Defendants' actions caused emotional distress, financial hardship, and deprivation of parental rights, weaponizing the court system against Plaintiff while engaging in unlawful judicial conduct.

## **CLAIMS FOR RELIEF**

COUNT I – VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)

Defendants deprived Plaintiff of their due process rights under the Fourteenth Amendment by issuing and enforcing a fraudulent child support order without jurisdiction or legal standing.

COUNT II – CIVIL RICO VIOLATIONS (18 U.S.C. § 1962)

Defendants engaged in a pattern of racketeering activity by conspiring to fabricate evidence, obstruct justice, and use their positions to perpetrate fraud for financial gain and control over Plaintiff's parental rights.

COUNT III – OBSTRUCTION OF JUSTICE (18 U.S.C. § 1503, § 1512)

Defendants obstructed Plaintiff's access to justice by blocking modification requests, refusing to provide legal remedies, and manipulating child support enforcement systems.

COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants knowingly and intentionally caused severe emotional distress by unlawfully stripping Plaintiff of parental rights and financial resources.

**RELIEF REQUESTED**

Plaintiff seeks the following relief:

a. A declaratory judgment that the child support order is void due to lack of jurisdiction.

b. An injunction preventing further enforcement of the fraudulent order.

c. Compensatory and punitive damages for financial and emotional harm.

d. Legal fees and costs incurred due to Defendants' misconduct.

e. Any further relief this Court deems just and proper.

Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States, the state of Kansas, and the State of Missouri.

## COUNT XLI

### COMPLAINT FOR VIOLATIONS OF FEDERAL RIGHTS, RICO ACT, AND JURISDICTIONAL ABUSE

### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Defendants, CMH, SEGS, CCSD, and KCPD, violated Plaintiff's constitutional rights and state law claims arising from Defendants' wrongful refusal to recognize and enforce a valid protection order granting Plaintiff custody of Plaintiff SG, and for related wrongful conduct.

Plaintiff obtained a valid protection order from Judge Kevin O'Grady in Johnson County Kansas 10th Judicial Circuit Court, granting Plaintiff custody of her daughter, SG.

The protection order was duly registered with CCCC and is publicly accessible via Case.net.

Plaintiff went to CMH to attend a medical appointment and to take custody of her daughter, SG, who was present at the hospital.

Plaintiff presented a certified copy of the protection order to hospital staff, specifically Social Worker #1 and Security Guard #1.

Hospital staff refused to recognize the protection order and refused to release SG to Plaintiff and prohibited her from entering the building.

Hospital staff allowed SEGS and VLTHG to take custody of SG, despite the protection order.

Social worker #1 came outside to speak with Plaintiff and denied Plaintiff access to the hospital building.

Social worker #1 stated that she would not acknowledge the valid protection order presented by the Plaintiff.

Social worker #1 ordered Plaintiff to leave the hospital premises, threatening arrest if Plaintiff did not comply.

Hospital staff, along with their security and KCPD, told plaintiff to leave the property.    CCSD and CCCC told the hospital that plaintiff doctored documents and they did not believe that the restraining order was valid.

The hospital staff, security guard, and Kansas City Police Department refused to serve SEGS with the restraining order.

Two Kansas City, Missouri Police Department officers telephoned their supervisor, who also refused to allow them to serve the protection order.

The hospital has deleted the online profile of SG and refuses to provide any information regarding her health.

Kansas City Police Department officers became aggressive towards Plaintiff due to false information provided by other defendants.

As of March 6, 2025, the hospital refuses to acknowledge Plaintiff.

SEGS is in contempt of the court order and refuses to provide information regarding SG's health, schooling, or well-being.

SEGS and VLTHG are engaging in parental alienation and forcing SG to call VLTHG "mom".

Plaintiff's character has been defamed by the false statements that Plaintiff "doctored documents." Plaintiff has never been convicted of such an offense. This false statement was used to justify the refusal to acknowledge the valid protection order, despite the legal obligation to do so under both federal and state law, which mandates full faith and credit be given to valid restraining orders from other states.

The defendants verified the existence of the restraining order and used the doctored document allegation as a pretext.

SEGS' wife, VLTHG, was present during these events and actively participated in preventing Plaintiff from accessing her daughter. She is complicit in the criminal behavior.

## CLAIMS FOR RELIEF

COUNT I: VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

Defendants' refusal to recognize and enforce the valid protection order deprived Plaintiff of her constitutionally protected rights to custody and familial relations.

COUNT II: INTERFERENCE WITH CUSTODY IN VIOLATION OF UCCJEA and PKA

CCSD Policy 312.7 FOREIGN COURT ORDERS (a) Various types of orders may be issued in domestic violence cases. Any foreign court order properly issued by a court of another state, Indian tribe or territory shall be enforced by deputies as if it were the order of a court in this state. (b) An order should be considered properly issued when it reasonably appears that the issuing court has jurisdiction over the parties and reasonable notice and opportunity to respond was given to the party against whom the order was issued (18 USC § 2265). An otherwise valid out-of-state court order shall be enforced, regardless of whether the order has been properly registered with this state. (c) The Clay County Sheriff's Office will enforce all properly issued orders, including all orders of protection which meet the requirements of 18 USC 2265.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants' conduct caused Plaintiff severe emotional distress.

## COUNT IV: CONTEMPT OF COURT (AGAINST SEGS)

SEGS is in direct violation of the court's protection order.

## COUNT V: PARENTAL ALIENATION

ADOSO, SPDVR, REJG, JHH, JT, DLA, MRR, SEGS and VLTHG are intentionally alienating the child from the plaintiff.

## COUNT VI: DEFAMATION

Defendants made false and defamatory statements that damaged Plaintiff's reputation.

## **PRAYER FOR RELIEF**

1. Declaration that Defendants violated Plaintiff's constitutional rights.

2. An injunction requiring CMH to provide KAC with all medical records and information regarding SG.

3. An injunction requiring SEGS to return SG to Plaintiff's custody.

4. Compensatory damages for emotional distress, pain, and suffering.

5. Punitive damages for Defendants' willful and malicious conduct.

## COUNT XLII

### COMPLAINT FOR VIOLATIONS OF FEDERAL RIGHTS, OBSTRUCTION OF JUSTICE, DEPRIVATION OF DUE PROCESS, AND CIVIL CONSPIRACY

### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Defendant Mary Rhodes Russell (MRR) is the Chief Justice of the Missouri Supreme Court, responsible for overseeing the judicial system and ensuring judicial accountability. She has knowingly participated in a RICO conspiracy by allowing corruption to persist.

MRR has knowingly ignored Plaintiff's pleadings, refused to assign an impartial judge, and allowed judges to violate Rule 17.46 by failing to properly file and resolve motions, causing an unjustified three-year delay in Plaintiff's case. MRR has aided and abetted this conspiracy by allowing falsified documents, ex parte communications, and the tampering of judicial records, including altered transcripts by court reporter Janet Love Holland Winer (JLHW).

Defendants ADOSO, DLA, and SPDVR conspired to file false charges against Plaintiff, falsify judicial records, and use their positions to obstruct justice. ADOSO, SPDVR, and DLA have colluded to fabricate charges against Plaintiff, resulting in an unlawful fugitive charge in Kansas and the issuance of a fraudulent Governor's warrant between Missouri and Kansas.

Other Defendants, including court clerks, prosecutors, and law enforcement officers, have contributed to the cover-up, destruction of evidence, and continued obstruction of Plaintiff's legal rights.

Defendant DLA was assigned to Plaintiff's case despite being affiliated with the disqualified 7th Circuit, ensuring continued judicial bias.

Plaintiff has been denied access to the courts despite submitting motions via email, fax, and certified mail.

This case involves cross-state judicial corruption, making it a federal matter under 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) and 18 U.S.C. § 1961 et seq. (RICO Act violations).

**Chief Justice Mary Rhodes Russell's Abuse of Power and Judicial Misconduct**

1. Despite numerous motions sent via email, fax, and certified mail, MRR has deliberately ignored Plaintiff's pleadings and refused to assign an impartial judge.

2. MRR knowingly appointed Judge Adkins, a former 7th Circuit judge, after disqualifying the 7th Circuit from Plaintiff's case, demonstrating her intentional participation in judicial misconduct.

3. Plaintiff's case has been open for over three years, yet MRR has refused to hold any judge accountable for failing to rule on pending motions or follow procedural requirements under Missouri Supreme Court Rule 17.46.

**Fraudulent Criminal Charges and the Governor's Warrant Conspiracy**

4. ADOSO and SPDVR knowingly filed false criminal charges against Plaintiff, leading to a fraudulent Governor's warrant issued between Missouri and Kansas to justify Plaintiff's arrest and incarceration.

5. These false charges were pursued to silence Plaintiff, obstruct her access to the courts, and prevent her from exposing the judicial corruption.

6. While detained in Johnson County Jail, Plaintiff was physically abused, threatened, and deprived of legal resources, and adequate medical care, violating her Eighth and Fourteenth Amendment rights.

**Tampering with Court Records and Transcripts**

7. Court reporter JLHW falsified Plaintiff's hearing transcripts, adding statements that were never made and listing parties (SEGS and his attorney Scott McGreevy) who were not present.

8. Despite Plaintiff's request for the original audio recordings, JLHW has refused to produce them, constituting evidence tampering under 18 U.S.C. § 1519.

9. MRR has been made aware of these falsifications but has taken no action to correct the record, furthering the conspiracy against Plaintiff.

**Destruction of Evidence and Judicial Cover-Up**

10. The Kansas and Missouri judicial systems have suppressed evidence critical to Plaintiff's defense, including:

11. Deletion of 911 calls reporting SEGS's violation of multiple restraining orders.

12. Destruction of video surveillance evidence from Kansas City Kansas Community College police, which showed Plaintiff being attacked.

13. Blocking Plaintiff's access to her own electronic devices containing exonerating evidence.

14. The Kansas and Missouri judiciary have illegally transmitted Plaintiff's evidence across multiple state district attorney's offices, tampering with it to fabricate additional false charges.

## CLAIMS FOR RELIEF

COUNT I – VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)

Defendants violated Plaintiff's Fourteenth Amendment rights by obstructing her access to the courts, ignoring legal motions, and allowing fabricated charges to persist.

COUNT II – OBSTRUCTION OF JUSTICE (18 U.S.C. § 1503, § 1519)

MRR and other Defendants tampered with evidence, ignored procedural rules, and obstructed judicial proceedings to cover up corruption and silence Plaintiff.

COUNT III – CIVIL CONSPIRACY (18 U.S.C. § 241, § 242 & RICO Act Violations, 18 U.S.C. § 1961 et seq.)

Defendants acted in concert to deprive Plaintiff of her constitutional rights, filing false charges, altering court records, and manipulating judicial proceedings.

COUNT IV – MALICIOUS PROSECUTION & FALSE IMPRISONMENT

False charges, wrongful detention, and fabricated evidence have deprived Plaintiff of liberty and caused severe emotional distress.

**RELIEF REQUESTED**

a.    A    declaratory    judgment    that    Defendants    violated    her    constitutional    rights.

b.    An    injunction    removing    judicial    officers    complicit    in    corruption.

c.        Federal        criminal        charges        against        Defendants.

d.    Compensatory    and    punitive    damages    for    wrongful    imprisonment    and    emotional    distress.

e. Immediate return of Plaintiff's property and legal evidence.


## COUNT XLIII

**COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE LAW, INCLUDING PARENTAL KIDNAPPING, VIOLATION OF RESTRAINING ORDERS, CONSPIRACY, AND DAMAGES**

**(ALL DEFENDANTS)**

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

Plaintiff brings this action under:

- The Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A

- 42 U.S.C. § 1983 (civil rights violations)

- 18 U.S.C. § 1204 (International Parental Kidnapping Crime Act)

- 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

- 18 U.S.C. § 241 (Conspiracy Against Rights)

- Missouri Revised Statutes § 565.153 (Parental Kidnapping)

- Kansas Statutes § 21-5409 (Interference with Parental Custody)

- Missouri Revised Statutes § 455.085 (Violation of Protective Orders)

Plaintiff is the lawful parent of SG and has multiple court orders granting her custody under UCCJEA and federal law.

Defendants SEGS and his wife, VLTHG, have violated multiple court orders, including restraining orders, and engaged in parental kidnapping by illegally withholding Plaintiff's daughter and refusing to provide any information regarding her welfare, schooling, or health.

Defendants have unlawfully retained and concealed the child, violating:

- Missouri Rev. Stat. § 565.153 (Parental Kidnapping)
- Kansas Stat. § 21-5409 (Interference with Parental Custody)
- Federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A

Defendants failed to return SG as required by law and prevented law enforcement from enforcing custody orders.

Defendants have ignored multiple police requests and court orders directing them to return the child to Plaintiff.

SEGS has a history of domestic violence against Plaintiff, and other former partners, and has ignored multiple restraining orders issued in Missouri and Kansas. His wife, VLTHG, has conspired with him to kidnap Plaintiff's daughter and deny Plaintiff her parental rights.

Violation of Restraining Orders and Domestic Violence History

Defendant SEGS has a documented history of domestic violence against Plaintiff, resulting in multiple restraining orders in Missouri and Kansas.

Despite these restraining orders, SEGS has violated them more than seven times, constituting violations of:

- Missouri Rev. Stat. § 455.085 (Violation of Protective Orders)
- Kansas Stat. § 21-5924 (Violation of Protective Order)
- 18 U.S.C. § 242 (Deprivation of Rights)

VLTHG has aided SEGS in these violations by harboring the child, refusing to comply with police directives, and actively alienating Plaintiff.

Defendants' Role in a RICO Conspiracy and Obstruction of Justice

Defendants have actively participated in the broader RICO scheme involving Missouri and Kansas judicial officials, law enforcement, and prosecutors who have refused to enforce custody orders and restraining orders.

Plaintiff has exhausted all legal avenues, including Filing police reports in Missouri and Kansas; Reporting the parental kidnapping to the Board of Commissioners and Seeking relief through state and federal courts.

Defendants' inaction and obstruction have caused Plaintiff severe emotional distress, PTSD, financial hardship, and loss of her fundamental parental rights.

Defendants' actions constitute criminal conduct under federal law, state law, and the U.S. Constitution and have caused severe emotional, psychological, and financial distress.

**CLAIMS FOR RELIEF**

COUNT I – VIOLATION OF THE PARENTAL KIDNAPPING PREVENTION ACT (28 U.S.C. § 1738A)

Defendants have violated federal law by unlawfully retaining and concealing Plaintiff's child.

Plaintiff seeks an emergency order directing law enforcement to return the child to her immediately.

COUNT II – VIOLATION OF 42 U.S.C. § 1983 (Deprivation of Parental Rights)

Defendants have deprived Plaintiff of her parental rights under color of law by illegally withholding the child and preventing access.

COUNT III – VIOLATION OF 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

By conspiring with state officials, Defendants have violated Plaintiff's constitutional rights.

COUNT IV – VIOLATION OF MISSOURI & KANSAS STATE LAWS ON PARENTAL KIDNAPPING

Defendants violated:

- Missouri Rev. Stat. § 565.153 (Parental Kidnapping)
- Kansas Stat. § 21-5409 (Interference with Custody)

Plaintiff demands criminal prosecution of Defendants under state law.

**<u>RELIEF REQUESTED</u>**

a. Declare Defendants SEGS and VLTHG in violation of federal and state law, including the Parental Kidnapping Prevention Act, the U.S. Constitution, and Missouri/Kansas laws regarding parental custody and restraining orders.

b. Order the immediate return of Plaintiff's child and enforce all valid restraining orders previously issued by courts in Missouri and Kansas.

c. Issue a permanent restraining order against SEGS and VLTHG, preventing them from further contact, harassment, or parental interference.

d. Order Defendants to provide Plaintiff with all medical, educational, and personal records of the child that they have unlawfully withheld.

e. Order Defendants to pay all back child support, damages for emotional, physical, and financial distress, and attorney fees.

f. Refer Defendants for federal criminal prosecution under 18 U.S.C. §§ 241, 242, and 1204 (parental kidnapping, conspiracy, and deprivation of rights).

g. Order a federal investigation by the FBI into this matter, including:

- Violations of federal and state law related to parental kidnapping, fraud, conspiracy, and obstruction of justice.
- Judicial misconduct, RICO violations, and unlawful court actions.
- Fraudulent court filings, forged documents, and falsified records used against Plaintiff.

h. Declare the previous judgments obtained against Plaintiff as void due to fraud, judicial corruption, and lack of jurisdiction.

i. Order law enforcement agencies to release all evidence wrongfully withheld from Plaintiff, including legal documents, transcripts, electronic communications, and surveillance footage.

j. Order that Plaintiff's due process rights be restored by ensuring access to the courts and a fair hearing in all pending matters.

k. Grant any further relief that this Court deems just and proper.

## COUNT XLIV
### COMPLAINT FOR VIOLATIONS OF FEDERAL AND STATE LAW
### (ALL DEFENDANTS)

Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-285 above, as though fully set forth. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

## MISSOURI COMMISSION OF RETIREMENT, REMOVAL AND DISCIPLINE

Plaintiff filed a complaint with the Committee against ADOSO, alleging judicial misconduct, including but not limited to: Usurpation of jurisdiction over Plaintiff's case for over two and a half years; Filing false charges and abuse of power; Stalking and harassment; Perjury and lying to government officials, including Governor Kehoe, resulting in a warrant for Plaintiff's arrest based on false charges; Directly telling the Plaintiff that they were no longer allowed to file motions in the Liberty court; and using detective Holiman to threaten the Plaintiff.

Plaintiff's complaint detailed specific violations of the Missouri Code of Judicial Conduct, including but not limited to: Failure to dispose of judicial matters promptly, citing the prolonged usurpation of jurisdiction; Abuse of judicial power and improper ex parte communications; Violation of judicial canon regarding maintaining professional competence, and integrity; and violation of judicial canon regarding impartiality and fairness.

The Committee ignored evidence of ADOSO directing RSH to threaten the Plaintiff.

121

The Committee responded to Plaintiff's complaint with false and irrelevant information, failing to address the specific allegations of misconduct. Instead, they mischaracterized ADOSO's usurpation of jurisdiction as a mere "mistake."

The Committee has consistently refused to hold ADOSO accountable, effectively blocking Plaintiff's access to the courts and the grievance process.

These actions demonstrate a clear bias against Plaintiff as a pro se litigant with a disability, violating their right to equal protection under the law.

Furthermore, the Committee has become complicit in ADOSO's ongoing misconduct, which has resulted in the alienation of Plaintiff from their children and unlawful interference with custody.

The Committee also ignored evidence that ADOSO directed RSH to threaten Plaintiff.

As an example of the blatant bias against Plaintiff, JCW and the Commission referred Judge Joe Don McGaugh to the Missouri Supreme Court for a six-month suspension for failing to rule timely in a dissolution of marriage case that remained unresolved from 2021 until 2024, along with 11 other counts of failing to issue timely rulings.

Meanwhile, in Plaintiff's case, more than 10 motions remain unruled upon and unaddressed, including:

- Motion to Strike GAL
- Motion for Change of Venue
- Motion to Amend
- Motion for Contempt
- Motion to Vacate and Set Aside
- Motion to Show Cause
- Motion for Final Judgment
- Motion to Participate in UCCJEA Conference with the Home State

It is now March 2025. Plaintiff's trial took place on November 29, 2022, and these motions have been pending since January 2023.

Because these matters remain open and unruled upon, Plaintiff is unable to file an appeal.

JWS is aware of this, as Plaintiff has communicated these concerns via email and included them in the complaint against ADOSO. Plaintiff's case has now remained unresolved for nearly three years—the same amount of time as in Judge McGaugh's case—yet the Committee has taken no action.

More egregiously, Plaintiff has not seen their child in over 2.5 years.

JWS refused to acknowledge Plaintiff's complaint, insisting that an official form must be submitted, despite the Committee's own website stating that a written letter is sufficient.

Plaintiff's letter not only outlined the factual allegations but also cited the specific violations of the Code of Judicial Conduct.

For nearly two years, JWS refused to acknowledge both the letter and the formal complaint. It was not until Plaintiff secured an alternative means of communication with the Commission—outside of JWS's email (jim.smith@court.mo.gov) —that the complaint was finally received.

Despite contacting Judge McGaugh throughout this process, the Commission has never extended the same courtesy to Plaintiff.

Upon information and belief, JWS and the Commission refused to hold ADOSO accountable because:

1. ADOSO's seat was up for re-election on December 31, 2024, and they sought to protect her position.

2. They aimed to conceal ADOSO's criminal acts from the public.
3. They wanted to ensure Robert E. Gordon secured a judicial seat in the 16th Circuit while keeping his misconduct hidden.
4. They sought to cover up the criminal acts of other co-conspirators in this case.

ADOSO and DLA have also failed to comply with Missouri Rule 17.46, which mandates that judges submit a report twice a year listing cases that remain under advisement or unresolved.

The Commission is fully aware of the excessive delays in Plaintiff's case and the reasons behind them but has refused to hold any judge in the 7th Circuit accountable—just as they initially failed to act in Judge McGaugh's case.

If the Commission was unaware, then ADOSO and DLA failed to comply with the Commission's rules, their oath of office, and the Judicial Code of Conduct. Yet, JWS and the Commission still refused to take action.

Judge McGaugh was ultimately suspended for one year without pay by the Missouri Supreme Court.

The Committee's continued refusal to address ADOSO's misconduct demonstrates a deliberate obstruction of justice and a failure to uphold judicial accountability.

## CLAIMS FOR RELIEF

Violation of Fourteenth Amendment Equal Protection and Due Process:

The Committee's biased and discriminatory conduct, coupled with their refusal to address

ADOSO's misconduct, violates Plaintiff's right to equal protection and due process under the

Fourteenth Amendment.

Obstruction of Access to Courts:

The Committee's actions have effectively blocked Plaintiff's access to the courts and the grievance process, violating Plaintiff's right to seek redress for grievances.

Violation of the Americans with Disabilities Act (ADA):

The committee has discriminated against the Plaintiff due to their disability.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1. Declare that the Committee's actions violate Plaintiff's rights under the Fourteenth Amendment and the ADA.

2. Issue an injunction compelling the Committee to:

A. Conduct a full and impartial investigation into Plaintiff's complaint against ADOSO.

B. Take appropriate disciplinary action against ADOSO for her misconduct.

C. Cease and desist from engaging in discriminatory practices against pro se litigants with disabilities.

D. Reinstate the Plaintiff's access to the grievance process.

E. Award Plaintiff such other and further relief as the Court deems just and proper.

## COMMITTEE ON THE JUDICIARY AND CIVIL AND CRIMINAL JURISPRUDENCE

The Committee on the Judiciary and Civil and Criminal Jurisprudence shall consider and report upon bills and matters relating to the judicial department of the state including the practice of the courts of this state, civil procedure and criminal laws, criminal costs and all related matters. The Committee shall also consider and report upon bills and matters referred to it relating to probation or parole of persons sentenced under the criminal laws of the state.

The committee was made aware of these due process violations and refused to act, investigate, or take corrective action. As such CJCCJ has violated Plaintiff's rights by allowing the following:

**Parental Kidnapping Prevention Act (PKPA):**

CCCC violated the PKPA by improperly asserting jurisdiction over SG, despite Kansas being the home state.

**Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA):**

CCCC violated the UCCJEA by:

- Refusing to participate in a several UCCJEA conference with Kansas.

- Improperly declaring Missouri as the home state.

  - Refusing to hold hearings required by the UCCJEA.

  - Refusing to acknowledge the Kansas protection order.

**Due Process Violations (14th Amendment):**

CCCC's actions, and the committee's refusal to act, continues to deprive Plaintiffs of their due process rights. Through instances of:

- Fake court orders.

- Deleted court dates and motions.

- Refusal to file motions.

- Refusal to correct transcripts.

- Denial of hearings.

- Denial of indigent status without proper cause.

**Interference with Criminal Proceedings:**

Ex Parte interference of the CCCC with the Wyandotte county criminal case.

Ex Parte conversations with federal and appellate court.

**Escalation of Abuses:**

Plaintiff asserts that the Committee's failure to address the egregious violations outlined above has emboldened the CCCC personnel, fostering a belief that they are beyond accountability. This perception of invincibility has resulted in an escalation of abuses, including the filing of false charges against the Plaintiff for tampering with a judiciary.

Specifically, the CCCC personnel, knowing that their previous actions were ignored by the committee, have now initiated criminal proceedings against the plaintiff in retaliation for her complaints."

**Supreme Court Involvement and Inaction:**

Plaintiff further alleges that MRR, despite being fully aware of the aforementioned violations, has consistently ignored filings and complaints submitted at the Supreme Court level.

Notably, MRR, with full knowledge of the CCCC's malfeasance, signed off on the 7th Circuit's recusal from the criminal case initiated against the Plaintiff. However, she has deliberately refused to assign a new judge to Plaintiff's child custody case, despite receiving formal requests via certified mail and email. This constitutes a deliberate attempt to obstruct justice and shield the perpetrators of these abuses.

Plaintiff asserts that MRR, instead of addressing the criminal behavior of the CCCC, traveled to Clay County to present awards of excellence to the very individuals responsible for the violations. This action demonstrates a clear endorsement of their misconduct and a disregard for the Plaintiff's rights. This was done with the knowledge that the plaintiff had survived severe mistreatment in the Johnson County Adult Detention center.

**Johnson County Adult Detention Center:**

The abuse and mistreatment endured by the Plaintiff in the Johnson County Adult Detention Center, which formed a part of the campaign of abuse, is now subject to separate civil and criminal

complaints. This abuse was allowed to happen and was known by CCCC and Johnson County District Court.

**Threats and Disqualification:**

ADOSO, despite being disqualified from the Plaintiff's case, engaged in direct threats against the Plaintiff. This threat was reported to MRR and other judicial officers and members of the legislature via email, providing verifiable evidence of this misconduct. This can be easily proven as the threat and the report to MRR are within court documents.

Furthermore, despite disqualification, ADOSO instructed RSH to convey to the Plaintiff that she was prohibited from filing documents in the 7th Circuit and barred from entering Liberty, Missouri. Instead, the Plaintiff was directed to file paperwork in Daviess County, where DLA presides.

This directive was a deliberate and illegal attempt to obstruct the Plaintiff's access to the courts, knowing that this was an impossible request. This demonstrates a clear pattern of obstruction and retaliation.

**Obstruction of Access to Courts:**

The actions of ADOSO, as conveyed through RSH, constitute a direct violation of the Plaintiff's right to access the courts. This illegal instruction was a deliberate attempt to isolate the plaintiff and prevent her from seeking legal redress. The actions of forcing the plaintiff to file in a county where they do not reside is a clear violation of law.

The filing of false charges against the plaintiff for violating a court order that MRR signed off on, when ADOSO blatantly violated that same order displays the double standard and malicious intent of the courts involved.

**Notification of State Officials:**

The Plaintiff has made diligent efforts to notify relevant state officials of these criminal activities. Emails were sent to the previous administration, including Governor Kehoe and members of his cabinet, detailing the ongoing violations and seeking intervention. These emails serve as documentation of the Plaintiff's attempts to exhaust all available avenues for redress.

If the courts involved have submitted a governor's warrant to Governor Kehoe based on false pretenses, they should be immediately disbarred, impeached, and imprisoned. If their actions cause Governor Kehoe to make false statements that cross state lines into Kansas, the Plaintiff intends to pursue both state and federal charges.

**Prayer for Relief:**

Plaintiff requests the court to:

- Address the retaliatory criminal charges filed against the Plaintiff and take measures to ensure her protection from further harassment.

- Investigate the conduct of MRR and take any action necessary to ensure the integrity of the judicial process.

- Declare that the CCCC's actions violated federal law.

    a. Order CCCC to comply with the PKPA and UCCJEA.

    b. Order the Committee on the Judiciary and Civil and Criminal Jurisprudence to investigate and take corrective action.

## MISSOURI BAR ASSOCIATION

Plaintiff filed detailed complaints with the Missouri Bar Association regarding misconduct by a Missouri family court commissioner, guardian ad litem, and attorney, including but not limited to:

    c. Forcing Plaintiff to trial without legal representation.
    d. Refusing to rule on motions to dismiss for lack of jurisdiction.
    e. Refusing to recuse herself despite a conflict of interest.
    f. Violating the UCCJEA.

129

g.  Criminally removing Plaintiff's child without a permanency hearing.
h.  Issuing a false child support order.
i.  Allowing the guardian ad litem to illegally cancel child support owed by SEGS.
j.  Untimely rulings.
k.  Threatening Plaintiff and Plaintiff's children with bodily harm.
l.  SEGS having Plaintiff's daughter around a sex offender.
m.  Guardian ad litem providing false information on his application.
n.  Falsification of documents and affidavits.

Despite receiving these complaints, the Missouri Bar Association has refused to acknowledge receipt, respond to, or investigate the allegations.

This refusal constitutes a deliberate failure to fulfill its duty to regulate the legal profession and protect the public.

The MBA's inaction has aided in the deprivation of the Plaintiffs rights.

**Causes of Action:**

Violation of Due Process (14th Amendment): The MBA's refusal to acknowledge or respond to Plaintiff's complaints deprived Plaintiff of their right to due process and a fair opportunity to address legal misconduct.

Failure to Act: The Missouri Bar Association has failed in its duty to act on credible complaints.

**Prayer for Relief:**

• Declaratory judgment that the Missouri Bar Association's refusal to respond violates Plaintiff's constitutional rights.

• Injunctive relief compelling the Missouri Bar Association to investigate the complaints.

• Damages for emotional distress, financial losses, and other harm.

## JUDICIAL PERFORMANCE REVIEW COMMITTEE

Plaintiff brings this action against the Commission on the Appointment of Judges for its endorsement of a family court commissioner (ADOSO) and referral of a guardian ad litem, despite receiving credible evidence of their egregious misconduct and unfitness for judicial office. The

Commission on the Appointment of Judges, responsible for recommending judicial appointments in Missouri.

Plaintiff provided the Commission on the Appointment of Judges with detailed information regarding the misconduct of ADOSO, SPDVR, and REJG, including: untimely rulings and refusal to rule on jurisdictional motions; threatening Plaintiff and Plaintiff's children with bodily harm; SEGS having Plaintiff's daughter around a sex offender; REJG providing false information on his application; and all of the other infractions listed in the previous complaint sections.

Despite this information, the Commission endorsed ADOSO for retention as a judge and referred the REJG to Governor Parsons for appointment as a family court commissioner.

This endorsement and referral demonstrate a deliberate disregard for credible evidence of misconduct and a failure to uphold the integrity of the judiciary.

The Commission's actions have directly contributed to the continued harm inflicted upon Plaintiff and their family.

**Causes of Action:**

Violation of Due Process (14th Amendment): The Commission's endorsement and referral, despite evidence of misconduct, deprived Plaintiff of their right to a fair and impartial judiciary.

Failure to vet candidates: The Commision failed to properly vet the candidates.

**Prayer for Relief:**

- Declaratory judgment that the Commission's actions violate Plaintiff's constitutional rights.

- Injunctive relief preventing the appointment of the REJG and rescinding the endorsement of ADOSO.

- Damages for emotional distress, financial losses, and other harm.

## MISSOURI OFFICE OF CHIEF DISCIPLINARY COUNSEL

Plaintiff brings this action against the Office of Chief Disciplinary Counsel (OCDC), Laura E. Elsbury (Director of OCDC), and other potentially liable parties, for violations of federal law and constitutional rights arising from the OCDC's refusal to investigate misconduct by a Missouri family court commissioner, guardian ad litem, and attorney, and for direct acts of conspiracy.

The OCDC's refusal to investigate, coupled with direct misrepresentations and actions, has deprived Plaintiff of due process, equal protection, and other fundamental rights, causing severe emotional and financial distress.

SPDVR engaged in numerous acts of misconduct, including: forcing Plaintiff to trial without legal representation; refusing to rule on motions to dismiss for lack of jurisdiction; refusing to recuse herself despite a conflict of interest with Connections To Success and SEGS; violating the UCCJEA by failing to establish proper jurisdiction and refusing to contact the home state of Kansas; criminally and fraudulently claiming Missouri as the home state; illegally removing Plaintiff's child from custody without a permanency hearing; issuing a false child support order; and allowing the guardian ad litem to illegally cancel child support owed by SEGS.

Plaintiff filed complaints with the OCDC regarding SPDVR and REJGs misconduct. Laura E. Elsbury, Director of the OCDC, made false statements to Plaintiff stating that OCDC does not investigate complaints against family court commissioners and the OCDC does not investigate complaints against guardian ad litem.

That she was MRR's attorney.

Robert E.J. Gordon filed false testimony in court.

Scott McGreevy filed a false affidavit of service.

Plaintiff's attorney abandoned representation, failing to file an appeal.

Laura E. Elsbury has filed cases against guardian ad litem's in the past for the same criminal acts.

Plaintiff believes these actions were taken in conspiracy to deprive Plaintiff of their rights, and in part to aid Robert E.J. Gordon in his pursuit of a judgeship.

The OCDC and Laura E. Elsbury took advantage of Plaintiff's disability and traumatic brain injury.

Plaintiff has video evidence of their child at a sex offender's home.

**Causes of Action:**

Violation of Due Process (14th Amendment): The OCDC's refusal to investigate and SPDVR and REJG's actions deprived Plaintiff of their right to due process.

Violation of Equal Protection (14th Amendment): The OCDC's discriminatory refusal to investigate constitutes a violation of equal protection.

Violation of the UCCJEA: SPDVR's failure to adhere to the UCCJEA deprived the court of proper jurisdiction.

Conspiracy to Violate Civil Rights (42 U.S.C. § 1983): The OCDC, Laura E. Elsbury, and others conspired to deprive Plaintiff of their constitutional rights.

**Prayer for Relief:**

- Declaratory judgment that the OCDC's actions violate Plaintiff's constitutional and federal rights.

- Injunctive relief compelling the OCDC to investigate the complaints.

- Damages for emotional distress, financial losses, and other harm.

SPDVR violated Missouri and federal law by refusing to rule on Plaintiff's motions in a timely manner, effectively denying Plaintiff due process and the right to a fair hearing.

Specifically, SPDVR failed to rule on motions to dismiss for lack of personal and subject-matter jurisdiction, leaving critical jurisdictional issues unresolved.

The OCDC, in response to Plaintiff's complaints, characterized SPDVR's and REJG's actions—including the usurpation of jurisdiction, the falsification of paperwork, and the submission of false affidavits—as "trial strategy."

The OCDC, through Laura E. Elsbury, stated that it cannot investigate "trial strategy," thereby effectively shielding SPDVR and REJG from accountability for actions that violate both state and federal law.

The failure of the OCDC to act on clearly illegal behavior, illustrates a systemic problem within the agency.

SPDVR has refused to hold a permanency hearing after criminally removing Plaintiff's child, which is against Missouri and federal law.

**Causes of Action:**

- Violation of Due Process (14th Amendment): SPDVR's refusal to rule on motions and the OCDC's refusal to investigate these clear violations of due process, as well as the misuse of "trial strategy" as a justification, deprived Plaintiff of their right to a fair hearing and legal recourse.

- Failure to Act: The OCDC's deliberate refusal to act on legitimate complaints, characterizing illegal actions as "trial strategy," constitutes a dereliction of their duty to protect the public and uphold the integrity of the legal profession.

- Aiding and Abetting: By not acting, the OCDC aids and abets the illegal behavior of CCCC.

## COMPLAINT FOR VIOLATIONS OF FEDERAL RIGHTS, CIVIL RICO, OBSTRUCTION OF JUSTICE, FAILURE TO PROTECT, AND JUDICIAL ABUSE (ALL DEFENDANTS)

Plaintiff brings this action under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962), and other applicable laws for violations of Plaintiff's constitutional rights under the Fourteenth Amendment (due process and equal protection), First Amendment (court access), and Fourth Amendment (failure to protect and obstruction of justice).

To prove a § 1983 conspiracy claim, Plaintiff must show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). Further, Plaintiff must "prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 civil conspiracy claim." Id. (citation omitted).

Defendants engaged in a pattern of misconduct, judicial abuse, destruction of evidence, obstruction of justice, and abuse of power to prevent Plaintiff from obtaining justice for a violent assault and repeated violations of restraining orders.

Plaintiff KAC is a resident of the state of Kansas, a victim of assault, obstruction of justice, and judicial misconduct. KAC was violently attacked by SEGS while exercising on KCKCC's property.

KAC immediately filed a police report, and SEGS was charged with aggravated felony domestic battery.

KCKCC and its police department failed to protect Plaintiff when she was attacked on campus, refused to release security footage, and later destroyed key video evidence to shield SEGS. KCKCC and its Police Department failed to protect Plaintiff, refused to provide evidence, and destroyed key surveillance footage. KCKCCPD was asked for video evidence, but the chief of police destroyed the footage and refused to allow KCK detectives to review it.

KCK Police Department, with a documented history of failing to protect Black women, failed to investigate the attack and blocked prosecution efforts.

Defendants blocked Plaintiff's access to the courts by refusing to allow Missouri and Kansas courts to prosecute SEGS for violating a Missouri restraining order and interfering with the judicial process in Kansas, where SEGS violated another restraining order over seven times.

Plaintiff exhausted all legal and administrative channels, contacting the police, police oversight boards in Kansas and Missouri, and other authorities, yet Defendants covered up their complicity in allowing Plaintiff's daughter to remain with a violent predator and registered sex offender. Defendant KCK Police Department engaged in a pattern of neglect, failed to investigate multiple violations of restraining orders, and obstructed justice.

KCKCC Chief of Police destroyed critical evidence and refused to allow detectives with KCKPD to review campus security footage.

Defendant SEGS committed a felony aggravated domestic battery against Plaintiff and repeatedly violated restraining orders.

Defendant SM, REJG, and ADOSO, and Kathleen Lynch exerted improper influence, interfered with SEGS's prosecution, ignored valid court orders, and engaged in a RICO conspiracy.

As a direct result of Defendants' deliberate inaction, abuse of power, and obstruction, Plaintiff has suffered extreme complex PTSD, further physical and emotional abuse, and repeated threats to her safety and her daughter's well-being.

**Obstruction of Justice by KCK Police Department**

KCKPD deliberately delayed assigning a detective to Plaintiff's case, only doing so months later after the first assigned detective refused to act.

KCKPD has a documented history of failing to protect Black women and mishandling domestic violence cases.

**Blocking Access to Courts and Interfering with Restraining Orders**

Defendants abused their power to block Missouri and Kansas courts from prosecuting SEGS for violating multiple restraining orders issued in Missouri.

When KCPD went to SEGS's home, he refused to give Plaintiff's daughter to the authorities, despite a valid Wyandotte County restraining order and an order granting Plaintiff custody.

SEGS violated his Kansas restraining order over seven times, yet Kansas authorities refused to act, further interfering with Plaintiff's legal rights and safety.

Plaintiff reported these violations to police oversight boards in both Kansas and Missouri, but officials refused to intervene, shielding SEGS and complicit judges from accountability.

**Judicial Corruption and RICO Conspiracy**

Upon information and belief, SEGS, his attorneys, REJG, SPDVR, ADOSO and Kathleen Lynch abused their power to halt criminal investigations, suppress evidence, and interfere with the judicial process.

Kathleen Lynch engaged in ex parte communications with SEGS and other parties, colluding to keep Plaintiff away from her child and break UCCJEA laws.

Defendants used their positions to delete 911 calls, block Plaintiff's access to courts, and obstruct justice in both Kansas and Missouri.

Defendants' deliberate inaction enabled further physical and emotional abuse, exacerbating Plaintiff's complex PTSD and trauma.

**CLAIMS FOR RELIEF**

COUNT I – VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)

Defendants violated Plaintiff's Fourteenth Amendment rights by blocking access to the courts, failing to protect her, and obstructing justice.

COUNT II – CIVIL RICO VIOLATIONS (18 U.S.C. § 1962)

Defendants engaged in a pattern of racketeering activity, obstructing justice, destroying evidence, and interfering with legal proceedings.

COUNT III – FAILURE TO PROTECT (FOURTEENTH AMENDMENT)

KCKCC and KCKPD failed to protect Plaintiff despite clear threats and evidence of violence.

COUNT IV – OBSTRUCTION OF JUSTICE (18 U.S.C. § 1503, § 1512)

Defendants destroyed video evidence, deleted 911 calls, and blocked access to legal remedies, constituting obstruction of justice.

COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants' actions caused severe emotional distress, PTSD, and continued threats.

**RELIEF REQUESTED**

a. A declaratory judgment that Defendants violated Plaintiff's rights.

b. An injunction ordering enforcement of restraining and custody orders.


## VIOLATION OF FEDERAL RIGHTS, OBSTRUCTION OF JUSTICE, INTERFERENCE WITH CUSTODY, AND CIVIL CONSPIRACY
## NORTH KANSAS CITY MISSOURI BOARD OF EDUCATION

Plaintiff brings this action under 42 U.S.C. § 1983 (civil rights violations), 18 U.S.C. § 1503 & § 1512 (obstruction of justice), and 28 U.S.C. § 1343 (civil conspiracy) for the Defendants' willful failure to enforce a valid restraining order, interference with Plaintiff's parental rights, and obstruction of custody proceedings.

Defendants ignored a stamped, valid Kansas court restraining order, knowingly allowed SEGS to disappear with Plaintiff's child for nearly a week, and engaged in a pattern of judicial misconduct, conspiracy, and child custody interference to protect SEGS and Judge O'Hara's network of corruption.

The North Kansas City School District, its Board of Education, and Gashland Elementary, through Attorney Stephen Book and Principal Tarah Palmer, refused to honor the court order and denied Plaintiff access to her child.

CCSD refused to serve the restraining order on SEGS and instead enabled SEGS to evade law enforcement and take Plaintiff's child unlawfully.

Plaintiff has been alienated from her daughter, deprived of her parental rights, denied access to school records, and prevented from participating in her daughter's education, missing her kindergarten year, graduation, and first grade entirely.

Plaintiff has exhausted all administrative remedies, sending letters of intent to sue to all Defendants, yet no response has been provided—a deliberate act of cover-up and judicial conspiracy.

Defendants acted in concert with ADOSO and other conspirators to sabotage Plaintiff's parental rights, interfere with custody proceedings, and silence Plaintiff through intimidation and false imprisonment schemes.

North Kansas City School District is a public educational institution responsible for the enrollment, custody, and care of students.

Board of Education of North Kansas City School District oversees school policies and compliance with legal obligations.

Gashland  Elementary, through Principal Tarah Palmer, willfully refused to enforce a valid court order, obstructed Plaintiff's parental rights, and enabled SEGS to disappear with Plaintiff's child.

Attorney Stephen Book acted under color of law to ignore the court order, stating he "chose not to honor it."

CCSD obstructed justice by refusing to serve SEGS with the restraining order and facilitated SEGS's disappearance with Plaintiff's child.

ADOSO and unknown conspirators abused judicial authority to intimidate Plaintiff, sabotage custody proceedings, and protect SEGS.

**Refusal to Honor a Court Order & Interference with Custody**

Plaintiff obtained a stamped restraining order issued by a Kansas court against SEGS, which was legally binding in Missouri.

Plaintiff provided copies of this restraining order to Defendants, including Gashland Elementary, Principal Tarah Palmer, and Attorney Stephen Book.

Attorney Stephen Book explicitly stated he "chose not to honor the court order," disregarding the legal mandate.

Principal Tarah Palmer denied Plaintiff access to her child, stating that her parents were SEGS and his wife, despite the restraining order.

When Plaintiff attempted to pick up her child at Gashland Elementary, the school refused to release the child and instead contacted SEGS, allowing him to take the child unlawfully.

A Clay County Sheriff's Deputy refused to serve SEGS with the restraining order when Plaintiff sought enforcement.

**Enabling SEGS to Evade Law Enforcement & Sabotage of Custody Proceedings**

- SEGS disappeared with Plaintiff's child for nearly a week, during which Defendants and ADOSO engaged in a coordinated effort to obstruct custody enforcement.

- ADOSO and co-conspirators used their influence to intimidate Plaintiff and sabotage the restraining order hearing before Judge O'Grady.

- Plaintiff's child was illegally enrolled in a school district where she does not legally reside, further violating custody laws.

Despite Plaintiff's repeated efforts to obtain school records, information, or any updates on her child's education, Defendants have refused to provide access, violating her parental rights.

**Ongoing Parental Alienation & Judicial Corruption**

- Defendants' actions resulted in Plaintiff missing her child's entire kindergarten and first-grade years, including her graduation and key milestones.

- ADOSO, knowing her connections to the school district, orchestrated this conspiracy to unlawfully strip Plaintiff of her parental rights, intending to imprison and physically harm Plaintiff.

Plaintiff has pursued every legal and administrative remedy, including sending letters of intent to sue to all Defendants, but has been met with silence, further confirming the cover-up and abuse of power.

**CLAIMS FOR RELIEF**

COUNT I – VIOLATION OF DUE PROCESS & PARENTAL RIGHTS (42 U.S.C. § 1983)

Defendants violated Plaintiff's Fourteenth Amendment rights by denying her custodial and parental rights, blocking access to her child's education, and refusing to enforce a valid court order.

COUNT II – OBSTRUCTION OF JUSTICE (18 U.S.C. § 1503, § 1512)

Defendants willfully obstructed justice by refusing to serve SEGS, destroying Plaintiff's legal standing, and interfering with custody enforcement.

COUNT III – CIVIL CONSPIRACY (28 U.S.C. § 1343)

Defendants conspired with ADOSO and others to deny Plaintiff access to her child, fabricate legal

obstacles, and facilitate SEGS's continued evasion of the law.

COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants' actions have caused severe emotional distress, PTSD, and irreparable harm to

Plaintiff and her child.

This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate

so that the parties may know the legal obligations that govern their present and future conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court do the following:

I.  Issue a temporary restraining order and/or preliminary injunction effective today, and later a
    permanent injunction, restraining Defendants, their employees, agents, and successors in office
    from enforcing the provisions challenged herein;

II. Assume jurisdiction over this action and all counts;

III. Issue a judgement in favor of Plaintiff for compensatory damages, in the amount $100,000,000.00
    and in a sum that is more than $75,000.00 and is otherwise reasonable compensation to the
    Plaintiff;

IV. Award Plaintiff damages for the aggravating circumstances associated with his detention and for
    punitive damages in an amount sufficient to punish these Defendants and others similarly situated;

V.  Order the return of all garnished tax returns;

VI. Award Plaintiff's reasonable attorneys' fees, including costs of this action, reasonable statutory
    attorney's fees under 42 U.S.C. § 1988;

VII.    Issue preliminary and permanent injunctions against Defendants, prohibiting them and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them from examining, transmitting, manipulating, transferring to others, or otherwise making use of judgement from CCCC against Plaintiffs; or information derived from such data and requiring that they delete, destroy, and/or expunge any information used from judgement or information derived from such information and requiring that they identify any third parties to whom they transferred any such information;

VIII.   Issue a judicial declaration that Defendants' actions as alleged in this Complaint violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, 18 U.S.C. §§ 241, 242 28 U.S.C. §§§§ 455, 1257, 1738, 2201, 2202;42 U.S.C.§§ 1985, 1986; Article I, §§§§ 1, 2, 10, 12 and Article V § 6 of the Missouri Constitution;  Missouri Judicial Code of Conduct Rules 2-2.11, 2.12, 2.14, 2-3.7, 23.11, 2-4.2; Clay County Missouri Family Court Local Rule 6, 11, 68, 108; Missouri Supreme Court Rule 129.04 App. C; Missouri common law; and has intentionally inflicted emotional distress upon each Plaintiff.

IX. Void judgement from trial court;

X.   Appoint counsel for Plaintiff's;

XI. Issue writ of habeas corpus as it pertains to violation of Plaintiffs civil rights;

XII.    Award nominal, compensatory, special, and statutory damages, in an amount according to proof, and treble damages to the extent permitted by law and in amount no less than $80, 000 for medical bills;

XIII.   Award pre-judgment and post judgment interest to the extent permitted by law.

Award Plaintiffs their costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988, 28 U.S.C. § 2412, and Missouri Code of Civil Procedure § 1021.5; and award such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Topeka, Kansas as the Place of Trial.

Respectfully submitted this 10TH day of March 2025.

KAC
ADDRESS CONFIDENTIAL
Olathe, KS 66062
Abolish7thCircuitFC@outlook.com
(913) 286-5099